**EXHIBIT A**

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Charter Communications, Inc.

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**11/07/2019** at 12:28:00 PM
Clerk of the Superior Court
By Regina Chanez, Deputy Clerk

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Stacy Desmond

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br><br>330 W. Broadway Street, San Diego, CA 92101 | **CASE NUMBER:** *(Número del Caso):*<br>37-2019-00054306-CU-WT-CTL |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Kevin Mirch, Mirch Law Firm, LLP,

| DATE:  11/08/2019 | 1180 Rosecrans Street Ste 104-552, | Clerk, by | R. Chanez | , Deputy |
|---|---|---|---|---|
| *(Fecha)* | San Diego, CA 92106 | *(Secretario)* | R. Chanez | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario  Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify)*:
3. [x] on behalf of *(specify)*: Charter Communications Inc.
   under: [x] CCP 416.10 (corporation)   [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership)   [ ] CCP 416.90 (authorized person)
   [ ] other *(specify)*:
4. [x] by personal delivery on *(date)*: 11/21/19

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

For your protection and privacy, please press the Clear This Form button after you have printed the form.   [ Print this form ]   [ Save this form ]   [ Clear this form ]

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**10/11/2019** at 05:26:27 PM

Clerk of the Superior Court
By Maria Acevedo, Deputy Clerk

1    Kevin J. Mirch, Bar No. 106973
     Marie C. Mirch, Bar No. 200833
2    MIRCH LAW FIRM LLP
     750 B. St., Suite 2500
3    San Diego, CA 92101
     (619)501-6220 tel.
4    (619)501-6980 fax

5    *Attorneys for Plaintiff*

6

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                  IN AND FOR THE COUNTY OF SAN DIEGO

9

10   STACY DESMOND,                    )   CASE NO: 37-2019-00054306-CU-WT-CTL
                                       )
11              Plaintiff,             )   COMPLAINT FOR DAMAGES
          v.                           )   And DEMAND FOR JURY TRIAL
12                                     )
     CHARTER COMMUNICATIONS, INC,      )   1. Breach of Implied Contract
13   DOES 1-10                         )   2. Claim for Wages
                                       )   3. Wrongful Termination
14              Defendants.            )   4. Retaliation
                                       )   5. Failure to Prevent
15                                     )      Discrimination and Retaliation
                                       )   6. Age Discrimination
16                                     )   7. Gender Discrimination
                                       )   8. Intentional Infliction of
17                                     )      Emotional Distress
                                       )   9. Negligent Infliction of
18                                     )      Emotional Distress
                                       )   10. Defamation
19                                     )   11. Harassment in Violation
                                       )       of FEHA
20                                     )   12. Violation of CFRA
                                       )       and FEHA
21                                     )   13. Violation of B & P §17200
                                       )       et. seq.
22                                     )   14. Violation of Unruh Civil
                                       )       Rights Act
23                                     )   15. Violation of Americans with
                                       )       Disabilities Act
24   _____ )

25

26

27

28   Complaint                    1                    Case No.

Plaintiff, by and through her attorney of record Mirch Law Firm LLP, alleges as follows:

### Preliminary Provisions:

1. Plaintiff, Stacy Desmond, at all times relevant hereto Plaintiff was over the age of 40 and a been a resident of the County of San Diego, State of California. Plaintiff is female.

2. Defendant, Charter Communications, Inc. (herein after referred to as "Charter" and/or "Spectrum"), was at all times relevant hereto, a Corporation, validly existing and doing business in the State of California, City of San Diego in San Diego County.

3. Plaintiff is ignorant of the true names and identities of Does 1-10, but none the less, sues the same as if more fully set forth herein. At such time as the true names and identities are known, Plaintiff will seek leave to amend this complaint.

4. Whenever the term Defendant is used without specific exclusion of any other Defendant, then all the Defendants are included in that term. This applies even if the term "Defendant" is used in the singular or the plural. Whenever the terms "Charter" and/or "Spectrum" is used it refers to all the Defendants, unless otherwise stated.

### Factual Allegations

5. Plaintiff started her work with Time Warner during November of 2010.

6. Plaintiff started as a DSR (Door to Door Salesman).

7. While working for Time Warner, Plaintiff was promoted to the Concierge team in 2014.

8. The concierge group managed sales in large apartment, condominium and other senior living communities in San Diego, California.

9. Charter Communications acquired Time Warner Cable in a merger transaction during

Complaint            2            Case No.

2016.

10.  Charter Communications operates its website at www.spectrum.com. According to Charter's website, it is America's fastest growing TV, internet, and voice company. Spectrum's cable tv services are regulated by state-approved local franchising authorities, including, but not limited to, city, county or other governmental organizations.

11.  Shortly after the Charter/Time Warner merger, Spectrum demoted Plaintiff from a higher paying concierge job to a DSR position (Door to Door Salesman). At that time there were no women "concierge" associates at Spectrum.

12.  Door to Door sales is the lowest sales job at Spectrum.

13.  At the time of Plaintiff's demotion from "concierge" to DSR ("Door to Door" sales) Spectrum knew that Plaintiff would be unable to performing DSR duties because that job required a large amount of walking with heavy sales materials. Plaintiff.

14.  Spectrum knew that Plaintiff suffered from back and neck injuries that would be would be exasperated by DSR door to door sales.

15.  Spectrum uses a "Six Sigma" management style.

16.  Plaintiff was replaced as a concierge by 3 younger men that were paid more than her male counterparts.

17.  On or about October 13, 2017, Plaintiff took the following adverse actions against Plaintiff:

18.  Plaintiff was harassed because of her sex/gender, disability and suffered retaliation for disclosing operating problems at Spectrum.

19.  Plaintiff was paid less than her younger male counterparts; asked impermissible non-job-related questions; denied a work environment free of discrimination and/or retaliation; denied employee benefits given to her younger male counterparts; denied promotions and/or privilege that were given to her younger male counterparts;

denied reasonable accommodation for her work related back and neck disability; denied work opportunities or assignments similar to those afforded her younger male counterparts; suffered long term aggressive retaliation after making disclosures about illegal conduct occurring at Spectrum (e.g., false advertising, discrimination, theft from customers' "auto-pay" accounts; and wrongful termination.

## **"RIGHT TO SUE" LETTER**

20.   After exhausting all of her administrative remedies, Plaintiff filed a complaint with DFEH on October 13, 2018 (DFEH No. 201810-03882413). Plaintiff received her right to sue letter on October 13, 2018. See Exhibit A attached hereto.

21.   Plaintiff's back and neck injuries became worse after Plaintiff was demoted to the DSR (door to door sales).

22.   Plaintiff's doctor restricted Plaintiff's DSR work in a physician's written order (note) that Plaintiff provided to her supervisors and/or managers at Spectrum.

23.   At all times related hereto, an accommodation that existed and was available was for "concierge" position at Spectrum.

## DESTRUCTION OF EVIDENCE.

24.   After Plaintiff's termination, Spectrum confiscated her computers, phones, electrical devices and data base information.

25.   Upon information and belief, Spectrum has destroyed Plaintiff's data base information including, but not limited to, her Emails.

## "BATE & SWITCH" SCHEME.

26.   While acting as a DSR Plaintiff complained about a "Customer Bate and Switch scheme".

27.   The "Bate and Switch" occurred when Spectrum advertised full cable coverage for $89.00 dollars per month, but only provided basic cable.

28. After Plaintiff complained about the "Bate and Switch", her supervisors and managers ignored her concerns, offering free installation along with the basic cable service for $89.00 per month. Payments were made to Spectrum out of its customers' "Auto-Pay" bank accounts.

## OVERCHARGING CABLE CUSTOMERS WHO PAID OUT OF "AUTO-PAY" ACCOUNTS:

29. Spectrum encouraged it customers to pay for cable services out of their "auto-pay" accounts.

30. On a regular basis, Spectrum overcharged its customers for entertainment that customers had not requested and/or received.

31. Spectrum intentionally charged its customers for pornography that was not requested nor received by its customers.

32. Spectrum's experience was that pornography and other embarrassing charges were not normally contested because of the embarrassing nature of the same.

33. Plaintiff complained directly to Spectrum upper management about the Customer "Bate and Switch" and overcharging through "auto-pay" accounts.

### Retaliation:

34. After complaining about the Customer "Bate and Switch" and overcharging, Plaintiff suffered relentless retaliation as part of Spectrum's scheme to force her to resign.

35. The relentless misconduct included, but was not limited to, gender-based, disability and whistle-blower discrimination.

36. That discrimination included, but was not limited to belittling Plaintiff by openly calling her an "incompetent woman", a "woman working in a man's job", "fat", "ugly", "stupid" and Plaintiff had to endure graphic sexual jokes.

37. During November of 2016, Plaintiff went out on medical leave for back and neck injuries related to her DSR (Door to Door) job. The DSR Job required Spectrum

associates to walk long distances while carrying heavy sales materials, computers and telephones.

38.    While Plaintiff was out on medical leave, Spectrum decided to terminate her because she suffered from debilitating neck and back pain that compromise her sales and eventually resulted in her wrongful termination.

39.    At all times relevant thereto, Spectrum knew that Plaintiff had excelled as a "concierge" which did not involve walking "door to door" and carrying a heavy computer, phone and sales materials.

40.    Plaintiff was denied a "concierge" accommodation even though she had successfully established and managed cable sales in over 19 apartment, condominium and/or senior living facilities in San Diego County.

41.    As part of Spectrum's plan to force Plaintiff to resign, Plaintiff's DSR geographic sales areas were flooded with other DSR's, installers and Call Center associates were encouraged to "poach" Plaintiff's sales.

42.    Plaintiff was required to sign up over 20 new cable sales per month in her DSR position without adjustment and/or any accommodation for her neck and back disabilities.

43.    Spectrum failed to accommodate Plaintiff's neck and back disability with lower monthly sales quota's after learning that Plaintiff's physician order to only work 5 days per week.

44.    In order to justify her wrongful termination, Spectrum also encouraged Call Center and cable installer associates to "poach" Plaintiff's cable customers.

45.    Spectrum encouraged associate "poaching" of Plaintiff's customers and cable contract related thereto, as part of a scheme to justify Plaintiff's wrongful termination based on her inability to "perform" (i.e., meet minimum sales goals of 20 new contracts and installations each month.

Complaint                                        6                            Case No.

46. During September of 2017, Plaintiff complained about Spectrum's legally improper sales policies and procedures that deprived her of commissions, favorable job performance, equal pay, and resulted in Plaintiff's wrongful termination.

47. Plaintiff was wrongfully terminated during November 2017.

48. After Plaintiff's termination, Spectrum destroyed Plaintiff's emails and confiscated her computer and phone equipment.

49. At all times relevant hereto, Plaintiff successfully performed all her duties while maintaining a close relationship with her customers and concierge related property managers.

## RETALIATION: LESS LEGITIMATE LEADS & POACHING PLAINTIFF'S CABLE CUSTOMERS.

50. After complaining about her "poached" sales, Spectrum reduced the number of legitimate leads provided to Plaintiff in favor of Plaintiff's younger male DSR's, installers and call center personnel.

51. Plaintiff was further restricted by not being allowed to sell in over 500 neighborhoods in San Diego County.

52. Plaintiff complained directly to Jose and Chris her supervisor and manager respectively.

53. After Plaintiff refused to resign, her commission structure was substantially reduced

54. Plaintiff was not paid her "Quick sales commissions". Instead, the "Quick Sales Commissions" were paid directly to Spectrum's younger male supervisors and managers.

## FAILURE TO PAY $20.00 PER DAY FOR POLICE CARD.

55. Spectrum ignored federal, state and municipal statutes, rules and regulations that required "all persons working as interviewers, solicitors, peddlers or vendors of

merchandise, services, magazines, etc., to obtain a Police Registration Card. When operating, the card MUST be displayed on the front of their person, and DSR's had to show the police card to any peace officer upon demand. (San Diego Municipal Code 33.1402).

56.   A solicitor's permit and payment was equal to $20 dollars per day per person.

57.   Spectrum refused to pay $20.00 per day per person permit fees because of financial constraints.

## FAILURE TO PAY ACTUAL COSTS RELATED TO PLAINTIFF'S USE OF HER CAR FOR THE DSR JOB.

58.   Spectrum required Plaintiff to use her own car to travel to neighborhoods where she was doing "Door to Door" sales.

59.   Spectrum failed, refused and/or neglected to reimburse Plaintiff for her actual expenses incurred as a result of using her car for work.

60.   Spectrum violated California Labor Code 2802, which mandates reimbursement for employees use of her own car in doing DSR work.

## DETAINED BY POLICE FOR NOT HAVING A DSR PERMIT.

61.   During a DSR session in Del Mar, Plaintiff was detained by Police who told her she could not knock on doors without an appropriate permit.

62.   When Plaintiff discussed her police detention for failing to have the correct permits, she was told by Spectrum supervisors and managers that the police were wrong and she did not need a permit.  This statement was false.

63.    Spectrum maintained "inflexible leave and attendance policies" that interfered with Plaintiff being able to recover from her back and neck injuries and/or to accommodate her a less physically demanding job (e.g., "concierge").

64.   After exhausting Plaintiff's administrative remedies, Spectrum failed to engage in reasonable accommodation discussions with Plaintiff in accordance with state and

federal statutes, rules and regulations.

65. Spectrum did not seek a reasonable accommodation with Plaintiff over her neck and back disability.

66. Spectrum's failure to accommodate Plaintiff's neck and back disability violated the Americans with Disabilities Act (ADA), California' Unruh Civil Rights Act, as well as a number of other Federal, State, and Municipal statutes, ordinances, rules, and regulations.

## SPECTRUM's DUTY TO AUDIT ITS COMPANY POLICIES FOR COMPLIANCE.

67. Spectrum was required to audit its own "Company" policies and procedures related to disability accommodations to assure compliance with the ADA and other Federal, State and Municipal statutes, ordinances, rules and regulations.

68. Spectrum failed to competently audit its compliance with Federal, State and Municipal statutes, ordinances, rules and regulations. These audits were necessary to assure compliance with ADA (Americans with Disabilities Act) and other regulatory mandates.

69. Spectrum failed to make exceptions to its inflexible policies regarding reasonable accommodations for Plaintiff and its other disabled associates.

70. Spectrum maintained inflexible leave and attendance policies that did not allow leave as a reasonable accommodation for employees with disabilities.

71. Plaintiff utilized her right to FMLA leave. Upon the exhaustion of Plaintiff's FMLA leave, Spectrum failed to engage in the interactive process to determine if reasonable accommodations could be provided, and simply notified Plaintiff that if she could not return to full duty, she would be discharged.

72. At all times relevant hereto, Spectrum had "concierge" accommodations available, but failed, refused and/or neglected to notify Plaintiff about the same.

# FIRST CAUSE OF ACTION

## BREACH OF IMPLIED CONTRACT

### (Charter/Spectrum)

73. Plaintiff incorporates by reference all the allegations of this complaint as if more fully set forth herein.

74. Spectrum and the Plaintiff entered into an implied contract for employment (i.e., Contract). Implicit in the contract of employment is Spectrum's obligation to follow all state, federal, and/or industry rules (including its own compliance with the same rules & regulations) regarding workplace safety and employment practices.

75. As alleged above, Spectrum failed to follow its own procedures and policies, including, but not limited to, standard operating procedures, safety procedures, and policies against discrimination, intentional retaliation and whistle blower

76. Plaintiff was required to work in a hostile environment. Plaintiff was required to work in unsafe conditions without required permits and minimal daily "door to door" sales permit charges.

77. Spectrum has established policies and procedures which prevented the wrongful termination of any employee based and fabricated and/or false facts.

78. Spectrum had established policies and procedures which outlined disciplinary action or write ups and enforcement policies and procedures related thereto.

79. Spectrum violated its implied contract when it fabricated write-up's in order to justify Plaintiff's wrongful termination.

80. The implied contracts were evidenced by the transfer of adequate legal consideration between the respective parties and amended by oral promises, written updates and conduct that implied additional or different terms and conditions required before the wrongful termination of Plaintiff.

81. Spectrum breached the terms and conditions of its implied contract, by failing to

follow its own standard operating procedures, safety standards and policies against retaliation, whistle blower retaliation and discrimination. Spectrum further breach the terms of its implied contract by falsely "documenting" Plaintiff's employee file to justify her wrongful termination. Plaintiff was not terminated   because of the facts alleged in her file, but instead for complaining about unsafe   c o n d i t i o n s; discrimination against protected class employees   ("age" and "gender"); and, Spectrum's fraudulent "bate and switch" and customer "overcharging".

82. Plaintiff has satisfied all the terms and conditions of her written, oral and implied contracts with Spectrum.

83. Spectrum's breaches are material.

84. Plaintiff has requested that Spectrum's breaches be cured on several occasions.

85. Spectrum has failed, refused and/or recklessly neglected to cure the alleged breaches.

86. As a direct and proximate cause of the breach of the implied contract by Spectrum, Plaintiff has been, and will be in the future, prevented from maximum her earnings.

87. The exact amount of the lost profits and loss of future earnings is thus far undetermined, and accordingly, will be proven at the time of trial.

88. Plaintiff has mitigated her damages by seeking employment throughout the cable industry. Plaintiff has been unable to obtain work in the cable industry because of rumors perpetuated by Spectrum both before and after her wrongful termination.

89. Plaintiff has retained an attorney in order to prosecute this action,   and, as a proximate cause, Plaintiff has been damaged and is entitled to reasonable attorney fees and costs related thereto.

90. As a proximate cause of Spectrum's breach of its implied contract with Plaintiff, she has been damaged substantially in excess of $100,000.00, the exact amount of which will be determined at the time of trial.

WHEREFORE, Plaintiff prays for relief as set forth below:

Complaint                                   11                          Case No.

## SECOND CAUSE OF ACTION

### Claim for Wages under California Labor Code

### (Against Charter/Spectrum)

91.     Plaintiff incorporates by reference all the previous paragraphs as if more fully set forth herein.

92.     Plaintiff was a nonexempt hourly employee at Spectrum.

93.     Plaintiff was required to work 6 days a week despite her physician orders to the contrary.

94.     At all times relevant hereto, Spectrum required Plaintiff to answer text messages and phone calls "off the clock". Plaintiff complained about being required to work off the clock and not receiving her full base pay and commissions.

95.     As part of its scheme to force Plaintiff to resign, Spectrum refused to pay Plaintiff for the actual time she was available and the correct amount of commissions she earned.

96.     Upon information and belief, the additional time spent answering text messages and phone calls pushed the Plaintiff over 40 hours per week on a weekly basis. Plaintiff was not compensated under California's wage and hour laws, including overtime laws for this time.

97.     Under California's overtime pay laws, an employee is entitled to be paid overtime pay at a rate of time and one half for: (1) each hour worked over eight in a single workday; (2) each hour worked over forty in a single workweek, and (3) the first eight hours worked on the seventh day of work in any workweek.

98.     California's overtime pay laws also require employers to pay employees who work in California double time for: (1) each hour worked over twelve in a single day and (2) each hour worked over eight on the seventh consecutive day of work in any given

Complaint                              12                          Case No.

workweek. Employers who fail to adhere to California's overtime pay laws can be assessed a number of penalties that will far exceed the actual amount owed to any terminated employee seeking back overtime pay wages owed.

62.    Pursuant to California Labor Code § 1194, "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." See Lab. Code, § 1194

63.    Plaintiff never agreed to work for a lesser wage.

64.    Defendant knew or should have known that Plaintiff was answering phone calls and text messages because the phone calls and messages were with managers and Plaintiff's supervisors.  Defendant has refused to pay Plaintiff all the amounts due under California law.  Spectrum did not pay overtime.

65.    Plaintiff also complained to Spectrum management that she was required to answer phone calls and text messages when she was off the clock and she did not get paid for this time.  Plaintiff complained that she should receive two hours pay for each email or text that she is required to answer off the clock.  Spectrum managers originally told Plaintiff that she was only supposed to be paid 20 minutes, but later confirmed that Plaintiff should be paid 2 hours for each incident.

66.    Spectrum has not paid Plaintiff wages or overtime for the work she was required to perform while she was off the clock.

67.    Spectrum did not provide the required meal or rest break periods as is required under California law.  Plaintiff was not able to take all of her rest and meal breaks because her position and her job requirements did not allow for breaks and discouraged breaks. Plaintiff complained that she was not able to take her breaks.  Plaintiff also

Complaint                                    13                          Case No.

complained that when she tried to take breaks, she did not receive uninterrupted break periods. Plaintiff specifically complained to her supervisors and managers about Spectrum's refusal to comply with Federal, State, Municipal, statutes, ordinances, rules and regulations.

68. As a result of Defendant's wage violations, Plaintiff has been substantially damaged in excess of $100,000.00. The exact amount of these damages will be determined at trial.

69. Plaintiff has retained an attorney in order to prosecute this action and accordingly are entitled to reasonable attorney fees and costs related thereto.

**WHEREFORE,** Plaintiff Plaintiff prays for relief as set forth below:

### THIRD CAUSE OF ACTION

### Wrongful Termination

### (Against Charter Communications, Inc./Spectrum)

70. Plaintiff incorporates by reference all the previous paragraphs of this complaint as if more fully set forth herein.

71. After Plaintiff was hired by Time Warner/Spectrum Plaintiff undertook and continued employment, and duly performed all the conditions of her employment.

72. At the time of Plaintiff's termination, she was ready, willing, and able to continuing to perform all the conditions of her employment with Spectrum.

73. Spectrum created procedures that were required to be followed before it could terminate an employee. These procedures were not followed before the Plaintiff was terminated

74. By harassing and terminating Plaintiff, Spectrum violated public policy, as set forth in California Statutes and Constitutional provisions including but not limited the California Labor Code, FEHA and Const. Art. I section 8.

75. On July 22, 2016, Spectrum wrongfully terminated Plaintiff from her employment

because of Plaintiff's age, gender, hostile work environment complaints, other complaints set forth above, a pre-inquiry complaint with the DFEH, and medical leave as set forth in greater detail above. Plaintiff's wrongful termination is in violation of public policy expressed in California Gov't Code §12900 et. seq.

76.     Plaintiff was wrongfully terminated in violation of FEHA and CFRA.

77.     As a direct and proximate result of Spectrum's illegal and/or improper conduct, Plaintiff has sustained and continues to suffer damages in terms of lost wages, lost bonuses, lost commissions, lost benefits, and other pecuniary loss according to proof that will be provided at trial.

78.     Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including humiliation, depression, anguish, embarrassment, shock, pain, discomfort, fatigue and anxiety. The amount of Plaintiff's damages will be determined at trial.

79.     As a result of it's discrimination and retaliation against the Plaintiff, Spectrum has subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights.

80.     Spectrum anticipated such hardship and knew that Plaintiff would suffer damage as a result of the same.

81.     As a consequence of the aforesaid oppressive, malicious, and despicable conduct, Plaintiff is entitled to an award of punitive damages in a sum to be shown according to proof pursuant to California Government Code §§12965, 12970.

82.     The act of oppression, fraud, and/or malice were engaged in by Spectrum. Spectrum had advance knowledge of the damages that would be sustained by Plaintiff when Spectrum demoted her from a "concierge" back to a "DSR". Spectrum acted with oppression, fraud, and/or malice, and/or authorized or ratified the wrongful conduct for which an award of punitive damages is sought, and/or was personally guilty of oppression, fraud, and/or malice. The advance knowledge and conscious disregard,

Complaint                                    15                          Case No.

authorization, ratification, or act of oppression, fraud, and/or malice was committed by or on part of an officer, director, or managing agent of Spectrum, thereby entitling Plaintiff to punitive damages and exemplary damages against Spectrum in accordance with California Civil Code section 3294.

83.   Plaintiff has incurred and continues to incur legal expenses and attorney fees which she is entitled to recover pursuant to California Government Code §12965 and FEHA.

**WHEREFORE**, Plaintiffs pray for relief as set forth below.

## FOURTH CAUSE OF ACTION

### Retaliation in Violation of FEHA

### (Against Charter

### Communications, Inc./Spectrum)

84.   Plaintiff, incorporates by reference all the allegations of this complaint as if more fully set forth herein.

85.   Spectrum retaliated against Plaintiff for complaining about Spectrum's illegal conduct within the work place including, but not limited to the following: Spectrum's harassing behavior, the hostile work environment, age and gender discrimination, commission manipulations, failure to accommodate Plaintiff's disability, and/or meal and rest break violations. Plaintiff was also retaliated against for taking medical leave, for complaining about safety issues associated with its "Door to Door" cable sales program. Spectrum regularly ignored, Plaintiff's pre-inquiry complaint with California's Department of Fair Employment and Housing. Spectrum's conduct was in violation of FEHA through numerous illegal acts, including those set forth in this Complaint.

86.   Plaintiff complained about safety issues associated with doing "Door to Door" sales. Spectrum ignored Plaintiff's complaints, except to retaliate against her for making

1          the same public.

87.   With respect to her safety complaints,  Plaintiff complained of OSHA violations, including, but not limited to,  associates doing "door to door" sales without safety training or adequate on-site staff to assure the safety of its DSR's.

88.   Plaintiff's  complaints were ignored by Spectrum.  Despite voicing her legitimate safety concerns, Plaintiff was required to continue "door to door" sales without proper safety training and on-site support.

89.   As a direct and proximate result of Spectrum's conduct,  Plaintiff has sustained and continues to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof that will be provided at trial.  Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including humiliation, depression, anguish, embarrassment, shock, pain, discomfort, fatigue and anxiety.  The amount of Ms. Desmond's damages will be determined at trial.

90.   Spectrum  subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights.  Spectrum anticipated such hardship and knew that Plaintiff would suffer damages.  As a consequence of the aforesaid oppressive, malicious, and despicable conduct, Plaintiff is entitled to an award of punitive damages in a sum to be shown according to proof pursuant to California Government Code §§12965, 12970.

91.   The act of oppression, fraud, and/or malice was engaged in by Spectrum.  Spectrum had advance knowledge of its legally improper conduct when it demoted her from concierge to DSR ("door to door" sales). Spectrum  acted with oppression, fraud, and/or malice, and/or authorized or ratified the wrongful conduct for which an award of punitive damages is sought, and/or was personally guilty of oppression, fraud, and/or malice.  The advance knowledge and conscious disregard, authorization, ratification, or act of oppression, fraud, and/or malice was committed by or on part

of an officer, director, or managing agent of Spectrum thereby entitling Plaintiff to punitive and exemplary damages against Spectrum in accordance with California Civil Code section 3294.

92.  Plaintiff has incurred and continues to incur legal expenses and attorney fees which she is entitled to recover pursuant to California Government Code §12965 and FEHA.

**WHEREFORE**, Plaintiffs pray for relief as set forth below

## FIFTH CAUSE OF ACTION

**Failure to Prevent Discrimination and Retaliation in Violation of**

**Gov't Code §12940(k) et. seq.**

**(Against Spectrum USA, Inc.)**

86.  Plaintiff, incorporates by reference all the allegations of this complaint as if more fully set forth herein.

87.  Spectrum failed to take immediate and appropriate corrective action to prevent and remedy the harassment, discrimination, and retaliation to which Plaintiff was subjected to as described above.

88.  As a direct and proximate result of Spectrum's conduct, Plaintiff has sustained and continues to suffer sever and serious emotional distress, the exact amount will be determined at trial.

89.  California Government Code section 12940(k) makes it an unlawful employment practice for an employer to "fail to take all reasonable steps to prevent discrimination and harassment from occurring." Spectrum violated this provision by failing to prevent discrimination against Plaintiff, including the discrimination described within the allegations of this complaint.

90.  Spectrum anticipated such hardship and knew that Plaintiff would suffer damages. As a consequence of the aforesaid oppressive, malicious, and despicable conduct,

Complaint                                    18                              Case No.

Plaintiff is entitled to an award of punitive damages in a sum to be determined according to proof adduced at trial pursuant to California Government Code §§12965, 12970.

91.  As a direct and proximate result of Spectrum's conduct,  Plaintiff has sustained and continues to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof that will be provided at trial.  Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including humiliation, depression, anguish, embarrassment, shock, pain, discomfort, fatigue and anxiety.  The amount of Ms. Desmond's damages will be determined at trial.

93.  In committing these acts, Spectrum was engaged in oppression, fraud, and/or malice under California Civil Code 3294, thereby entitling Ms. Desmond to punitive damages.

94.  The act of oppression, fraud, and/or malice were engaged in by Spectrum against Plaintiff to force her to resign and/or to justify her wrongful termination. Spectrum had advance knowledge of the unfitness of its management team, but none the less, continued to act with oppression, fraud, and/or malice, and/or authorized or ratified the wrongful conduct for which an award of punitive damages is sought, and/or was personally guilty of oppression, fraud, and/or malice.  The advance knowledge and conscious disregard, authorization, ratification, or act of oppression, fraud, and/or malice was committed by or on part of an officer, director, or managing agent of Spectrum, thereby entitling Plaintiff to punitive damages and exemplary damages against Spectrum in accordance with California Civil Code section 3294.

95.  Plaintiff has incurred and continues to incur legal expenses and attorney fees

Complaint                                    19                        Case No.

1    which she is entitled to recover pursuant to California Government Code §12965

2    and FEHA.

3  **WHEREFORE**, Plaintiffs pray for relief as set forth below.

4                              **SIXTH CAUSE OF ACTION**

5                   **Age Discrimination in Violation of the FEHA**

6                          **(Against Spectrum USA, Inc.)**

7    96.    Plaintiff, incorporates by reference all the allegations of this complaint as if more

8           fully set forth herein.

9    97.    Cal. Gov't Code § 12941 prohibits age discrimination in the workplace.

10

11   98.    At the time Plaintiff was terminated she was over 45 years old and satisfactorily

12          performing her job since being hired.

13   99.    While Plaintiff was working with Spectrum she was exposed to regular comments

14          about getting rid of the "old" employees.  Spectrum management regularly made

15          comments that it was going to get all new people because the old people did not do

16          their jobs; they made too much money; and, were too set in their ways. Spectrum

17          management made statements, such as, "let's performance them out". After

18          agreeing to "performance out" Plaintiff, Spectrum management fabricated things up

19          to put in writeups so that it had a reasonable basis to wrongfully terminate Plaintiff

20          and other associates. Spectrum did not hold its associates equally accountable for the

21          fabricated conduct. Spectrum's decisions to wrongfully terminate Plaintiff and other

22          similarly situated employees, was very subjective.   Plaintiff was ultimately

23          terminated for conduct that other employees were permitted to do without

24          disciplinary consequence.

25   100.   Plaintiff was asked on multiple occasions when she was going to retire.

26          Other younger employees were not asked when they were going to retire.

27

28   Complaint                              20                      Case No.

101.   Spectrum allowed managers to subjectively discipline individuals which resulted in the tenured women and older associates being targeted and disciplined. Spectrum did not discipline its younger managers and associates. Spectrum managers instructed its supervisors/managers to convince older, female and/or tenured associates to step down or quit.

102.   Plaintiff did not receive raises and promotions commensurate with her younger, male, less experienced counterparts.

103.   Spectrum's policies regarding writeups, reviews, ratings, bonuses, and raises supported discrimination against Plaintiff and other similarly situated employees. Spectrum's policies had a discriminatory impact against older, more experienced, female associates. Spectrum's Management team was bonused based on reductions in payroll and commissions. If the managers had a high payroll, their bonus is less.

The same Spectrum managers whose bonuses were tied to payroll cuts participated in associate ratings, reviews, raises, demotions with pay cuts, and terminations. This policy encouraged discrimination and has a discriminatory impact because tenured female employees, such as the Plaintiff, were targeted by Spectrum management because they have earned higher wages through their HD career, and the managers have financial incentive to terminate or demote the higher paid employees.

104.   As a direct and proximate result of Spectrum's legally improper conduct, Plaintiff has sustained and continues to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof that will be adduced at trial. Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including humiliation, depression, anguish, embarrassment, shock, pain, discomfort, fatigue and anxiety. The amount of these damages will be proven at trial.

105.   Spectrum's discrimination against Plaintiff due to her age, gender and as retaliation for disclosing improper legal conduct, subjected Plaintiff to cruel and unjust hardship

in conscious disregard of Plaintiff's rights.  Spectrum anticipated such hardship and knew that Plaintiff would suffer damages.  As a consequence of the aforesaid oppressive, malicious, and despicable conduct, Plaintiff is entitled to an award of punitive damages in a sum to be shown according to proof pursuant to California Government Code §§12965, 12970.

106.  The acts of oppression, fraud, and/or malice were engaged in by the Spectrum's Management teams.  Spectrum's upper management had advance knowledge that its conduct was illegal as it was subject to a number of regulatory challenges from OSHA, EEOC, Department of Labor, and California Attorney General's office regarding the same.

107.  Spectrum's management team acted with oppression, fraud, and/or malice, and/or authorized or ratified the wrongful conduct for which an award of punitive damages is sought, and/or was personally guilty of oppression, fraud, and/or malice. Spectrum's advance knowledge and conscious disregard, authorization, ratification, or act of oppression, fraud, and/or malice was committed by or on part of an officer, director, or managing agent of Spectrum, thereby entitling Plaintiff to punitive damages and exemplary damages against it in accordance with California Civil Code section 3294.

108.  Plaintiff has incurred and continues to incur legal expenses and attorney fees which she is entitled to recover pursuant to California Government Code §12965 and FEHA.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## SEVENTH CAUSE OF ACTION

### Gender Discrimination in Violation of FEHA

### (Against Spectrum USA, Inc.)

109.  Plaintiff, incorporates by reference all the allegations of this complaint as if more fully set forth herein.

Complaint                                    22                              Case No.

110.   Plaintiff is a female.

111.   At all times relevant hereto, Plaintiff was   over the age of 40.   Plaintiff was wrongfully terminated in violation of the FEHA due in part to her being female over the age of 40 and a whistleblower . Plaintiff was not given promotions or raises due in part to her age, gender and because she was a whistleblower.

112.   Spectrum has a history of discrimination practices against women over 40 years old who were whistleblowers as a result of disclosing illegal conduct to her supervisors and managers.

113.   As a direct and proximate result of Defendants' conduct,  Plaintiff has sustained and continues to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof that will be provided at trial.  Plaintiff has also suffered will continue to suffer physical and emotional injuries, including humiliation, depression, anguish, embarrassment, shock, pain, discomfort, fatigue and anxiety.  The amount of Plaintiff's damages will be determined at trial.

114.   Spectrum's discriminatory conduct against Plaintiff subjected her to cruel and unjust hardship in conscious disregard of Plaintiff's rights.  Spectrum anticipated such hardship and knew that Plaintiff would suffer severe damages as a result of the same. As a consequence of the aforesaid oppressive, malicious, and despicable conduct, Plaintiff is entitled to an award of punitive damages in a sum in accordance to proof pursuant to California Government Code §§12965 & 12970.

115.   The acts of oppression, fraud, and/or malice were engaged in by Spectrum against Plaintiff.   Spectrum had advanced knowledge of its illegal conduct and acted with oppression, fraud, and/or malice, and/or authorized or ratified the wrongful conduct for which an award of punitive damages is sought, and/or was personally guilty of oppression, fraud, and/or malice.  The advance knowledge and conscious disregard,

Complaint                                23                         Case No.

authorization, ratification, or act of oppression, fraud, and/or malice was committed by or on part of an officer, director, or managing agent of Spectrum, thereby entitling Plaintiff to punitive and exemplary damages against Spectrum in accordance with California Civil Code section 3294.

116.   Plaintiff has incurred and continues to incur legal expenses and attorney fees which she is entitled to recover pursuant to California Government Code §12965 and FEHA.

**WHEREFORE**, Plaintiffs pray for relief as set forth below.

### EIGHTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### (Against All Defendants)

117.   Plaintiff incorporates by reference all the previous paragraphs of this complaint as if more fully set forth herein.

118.   The conduct complained of herein was outside the conduct expected to exist in the workplace, was intentional and malicious done for the purpose of causing Plaintiff to suffer humiliation, mental anguish, and emotional and physical distress. Spectrum in confirming and ratifying the complained of conduct, did so while knowing that Plaintiff's emotional and physical distress would thereby increase, and, accordingly, was done with a wanton and reckless disregard of the consequences to Plaintiff.

119.   Spectrum's management engaged in harassing behavior against the Plaintiff as alleged above. This conduct was not necessary for performance of any supervisory job. Instead, the conduct was outside the scope of any necessary job performance, engaged in for personal gratification because of meanness or bigotry, and/or for other personal motives (e.g., to discourage whistle blower complaints).

120.   The conduct toward the Plaintiff was not necessary for management of the employer's business or performance of the supervisory employee's job. Plaintiff

Complaint                                   24                          Case No.

complained about the harassing behavior to Spectrum on numerous occasions. Plaintiff used every complaint process that she was instructed to use, yet Spectrum did not take any reasonable steps to prevent the harassment. Instead Spectrum allowed management, to continue to harass the Plaintiff and to wrongfully terminate the Plaintiff.

121. Spectrum's conduct constitutes extreme and outrageous conduct against Plaintiff. Spectrum engaged in this conduct with the intention of causing, or reckless disregard of the probability of causing, emotional distress to Plaintiff.

122. As a proximate result of Spectrum's intentional infliction of emotional distress as herein alleged, Plaintiff has been harmed as she has suffered severe and/or extreme emotional distress including humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and health.  As a result of said distress and consequent harm, Plaintiff has suffered such damages in an amount in accordance with proof at time of trial.

123. Spectrum by engaging in the conduct as herein above alleged, acted fraudulently, maliciously, oppressively and with reckless disregard of Plaintiff's rights and safety, and thereby entitling Plaintiff to an award of punitive damages.

124. Defendants, and each of them, authorized, ratified, knew of the wrongful conduct complained of herein, but failed to take immediate and appropriate corrective action to remedy the situation and thereby acted fraudulently, maliciously, oppressively and with reckless disregard of Plaintiff's rights and safety, and thereby entitling Plaintiff to an award of punitive and/or exemplary damages.

WHEREFORE, Plaintiff requests relief as hereinafter provided.

///

///

## NINTH CAUSE OF ACTION

### Negligent Infliction of Emotional Distress

### (Against All Defendants)

125.   Plaintiff incorporates by reference all the previous paragraphs of this complaint as if more fully set forth herein.

126.   In the alternative, if said conduct of Spectrum, its agents, associates, employees was not intentional it was negligent and Plaintiff is thereby entitled to general damages for the negligent infliction of emotional distress.

127.   The conduct toward the Plaintiff was not necessary for management of the employer's business or performance of the supervisory employee's job. Plaintiff complained about the harassing behavior to Spectrum on numerous occasions. Plaintiff used every complaint process that she was instructed to use, yet Spectrum did not take any reasonable steps to prevent the harassment. Instead Spectrum allowed management, to continue to harass the Plaintiff and to wrongfully terminate the Plaintiff.

128.   Spectrum's conduct constitutes extreme and outrageous conduct against Plaintiff. Spectrum engaged in this conduct with the intention of causing, or reckless disregard of the probability of causing, emotional distress to Plaintiff.

129.   As a proximate result of Spectrum's intentional infliction of emotional distress as herein alleged, Plaintiff has been harmed as she has suffered severe and/or extreme emotional distress including humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and health. As a result of said distress and consequent harm, Plaintiff has suffered such damages in an amount in accordance with proof at time of trial.

130.   Spectrum by engaging in the conduct as herein above alleged, acted fraudulently, maliciously, oppressively and with reckless disregard of Plaintiff's rights and safety,

Complaint                                  26                              Case No.

1          and thereby entitling Plaintiff to an award of punitive damages.

2     131.   Defendants, and each of them, authorized, ratified, knew of the wrongful conduct

3          complained of herein, but failed to take immediate and appropriate corrective action

4          to remedy the situation and thereby acted fraudulently, maliciously, oppressively and

5          with reckless disregard of Plaintiff's rights and safety, and thereby entitling Plaintiff

6          to an award of punitive and/or exemplary damages.

7     WHEREFORE, Plaintiff requests relief as hereinafter provided.

8                          **TENTH CAUSE OF ACTION**

9                               **Defamation**

10                         **(Against Spectrum USA, Inc.)**

11    132.   Plaintiff incorporates by reference all the previous paragraphs of this complaint as

12         if more fully set forth herein.

13    133.   Defendant intentionally made a number of false and disparaging statements about

14         Plaintiff in order to justify her termination. The false and disparaging comments

15         include, but are not limited to the following:

16    1.     Spectrum management has told other managers, associates and customers that

17         the Plaintiff failed to perform and was terminated for the same. This and

18         other similar statements are false as Spectrum had manipulated Plaintiff's

19         sales by flooding her area and leads with other DSR, installers and Call

20         Center employees who were encouraged to "poach" Plaintiff's commissions

21         by claiming the same were theirs.

22    2.     Spectrum management has told other managers, associates and customers that

23         the Plaintiff could not perform her job duties because she was disabled. This

24         and other similar statements are false as Spectrum had manipulated Plaintiff's

25         sales by flooding her area and leads with other DSR, installers and Call

26         Center employees who were encouraged to "poach" Plaintiff's business by

claiming that they were entitled to her commissions.

3. Spectrum management has told other managers, associates and customers that the Plaintiff could not perform her job duties as a "concierge" because she was disabled. This and other similar statements are false as Plaintiff had outperformed other "concierge" associates, including, but not limited to her younger less experienced male counterparts.

4. Spectrum management has told other managers, associates and customers that the Plaintiff had "fabricated" her whistleblower claims. This and other similar statements are false as Plaintiff had disclosed actual incidents involving theft of customer money and associate commissions that were truthful.

134. The statements were false and therefore slanderous.

135. Defendant published the false and disparaging statements on or about the following dates: July of 2016 to the present.

136. Defendant intentionally made the false and disparaging statements in order to cause harm to Plaintiff's career.

137. As a result of Defendant's legally improper conduct, Plaintiff has been damaged substantially in excess of $25,000.00.

138. Plaintiff retained an attorney in order to prosecute this action, and accordingly, Plaintiff is entitled to reasonable attorney fees and costs related thereto.

139. In committing the acts herein mentioned, Spectrum has acted arbitrarily, capriciously, maliciously and with reckless disregard for the rights and safety of the Plaintiff, and accordingly, Plaintiff is entitled to punitive and/or exemplary damages, in an amount to be determined at the time of trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

## ELEVENTH CAUSE OF ACTION

### Harassment in Violation of FEHA and Gov't Code section 12940(j)

### (Against All Defendants)

140. Plaintiff incorporates by reference all the previous paragraphs of this complaint as if more fully set forth herein.

141. Plaintiff was subjected to harassment based on her protected status as a female over the age of forty, in her workplace at Spectrum causing a hostile or abusive work environment.

142. Plaintiff was subjected to unwanted harassing conduct because she was a female and over forty, disabled and because she took medical leave, and complained about illegal behavior in the workplace.

143. The harassing conduct was so severe, widespread, or persistent that a reasonable female employee in Plaintiff's circumstances would have considered the work environment to be hostile or abusive.

144. Plaintiff considered the work environment to be hostile or abusive.

145. Spectrum's managers and supervisors had authority over the Plaintiff. Spectrum's management and supervisory employees harassed Plaintiff. Plaintiff's supervisors and managers yelled at Plaintiff, using derogatory and profane language.

146. Spectrum supervisors and managers engaged in harassing behavior against Plaintiff as explained in greater detail above. This conduct was not necessary for performance of any supervisory job. Instead, the conduct was outside the scope of any necessary job performance, engaged in for personal gratification because of meanness or bigotry, and/or for other personal motives. The conduct toward the Plaintiff was not necessary for management of the employer's business or performance of the supervisory employee's job. Plaintiff complained about the harassing behavior to

Complaint                                    29                        Case No.

Spectrum Management on numerous occasions.  Plaintiff used every complaint process that she was instructed to use, yet Spectrum did not take any reasonable steps to prevent the harassment. Instead, Spectrum encouraged and allowed its supervisors and managers to continue harassing Plaintiff and to justify her subsequent wrongful termination.

147.   Spectrum upper management knew about the legally improper conduct because Plaintiff complained to her Human Resource Manager about the harassing conduct. Spectrum failed, refused and/or recklessly neglected  to make immediate and appropriate corrective action.

148.   Plaintiff was harmed.  Plaintiff had to take a medical leave of absence due to the stress and physical harm to her neck and back caused when Plaintiff was wrongly demoted back to a DSR position.  Moreover, Plaintiff was subjected to writeups that were fabricated to justify her eventual termination. Spectrum's conduct was a substantial factor in causing Plaintiff's harm.

149.   As a result of Defendant's legally improper conduct, Plaintiff has  been damaged substantially in excess of $25,000.00.

150.   Plaintiff  retained an attorney in order to prosecute this action,  and accordingly, Plaintiff is entitled to reasonable attorney fees and costs related thereto.

151.   In committing the acts herein mentioned, Spectrum has acted arbitrarily, capriciously, maliciously and with reckless disregard for the  rights and safety of the Plaintiff, and accordingly, Plaintiff is entitled to punitive and/or exemplary damages, in an amount to be determined at the time of trial.

WHEREFORE, Plaintiff requests relief as hereinafter provided.

///

Complaint                                    30                              Case No.

## TWELFTH CAUSE OF ACTION

### Violation of California's Family Rights Act (CFRA) &

### The Federal Family and Medical Leave Act of 1993 (FMLA).

### (Against Spectrum USA, Inc.)

152. Plaintiff incorporates by reference all the previous paragraphs of this complaint as if more fully set forth herein.

153. In California, employers are subject to the California Family Rights Act (CFRA) and the Federal Family and Medical Leave Act of 1993 (FMLA).

154. Spectrum is required to offer unpaid family or medical leave to eligible employees for certain qualifying reasons.

155. Spectrum has over 50 employees and is covered by the CFRA and FMLA.

156. Plaintiff was told by Spectrum supervisors and managers that she was eligible for CFRA and FMLA.

157. Plaintiff exercised her right to take leave. Plaintiff requested leave from her manager and was told that she would be accommodated for her medical needs.

158. Spectrum's supervisors and managers subsequently told Plaintiff that she did not need to go on leave of absence and told her not to worry about it. Despite these assurances, Plaintiff's supervisors and managers told her that she could utilize its "interactive reasonable accommodation" policy, and she could adjust her work schedule to fit her needs. These assurances were false as Plaintiff was not allowed to take leave without being subjected to a decision to terminate her once she returned to work.

159. During November of 2017, Plaintiff was terminated from her employment at Spectrum. At the time of her termination, Plaintiff was 44 years old. Spectrum has given conflicting reasons for Plaintiff's termination, including Plaintiff's failure to close 20 cable sales per month.

Complaint                                     31                           Case No.

160.  Plaintiff had closed over 20 sales per month prior to the time that Spectrum encouraged Call Center employees, other DSR's and commissioned installers to "poaching" sales and claiming that they were entitled to her commissions.

161.  While Plaintiff was on medical leave of absence during 2016 through 2017, Spectrum decided to terminate Plaintiff when she returned to work. This decision to terminate Plaintiff while on FMLA leave was done in violation of federal and California state laws.

162.  As a proximate cause of Defendant's legally improper conduct, Plaintiff has been damaged substantially in excess of $25,000.00.

163.  Plaintiff has retained an attorney to prosecute this action, and, accordingly, she is entitled to reasonable attorney fees and costs related thereto.

164.  In committing the acts herein mentioned, Spectrum has acted arbitrarily, capriciously, maliciously and with reckless disregard for the rights and safety of the Plaintiff, and accordingly, Plaintiff is entitled to punitive and/or exemplary damages, in an amount to be determined at the time of trial.

WHEREFORE, Plaintiff requests relief as hereinafter provided.

## THIRTEENTH CAUSE OF ACTION

### Violation of Business and Professions

### Code Sections 17200 et. seq.

### (Against Spectrum)

165.  Plaintiff incorporates by reference all the allegations of this complaint as if more fully set forth herein.

166.  Spectrum has violated and continues to violate Business & Professions Code, section17200, et seq. by engaging in acts of unfair competition including, but not limited to, the following:

Complaint

32

Case No.

a. Targeting Plaintiff for termination after she complained about discrimination against her by Spectrum Management.

b. By wrongfully demoting her from her "concierge" position that she had been very successful in growing to thousands of units on various cable contracts.

c. Spectrum retaliated against Plaintiff for complaining about Spectrum's "Bate and Switch" advertising alleged above.

d. Spectrum retaliated against Plaintiff complaining about overcharges made by Spectrum for pornographic viewing that did not occur, based upon a common understanding that most subscribers would not complain about the embarrassing charges.

e. Plaintiff was wrongfully terminated after Spectrum fabricated performance writeups that it had manipulated to justify her wrongful termination.

f. Violation of California Unruh Civil Rights Act

167. As a result of Defendant's legally improper conduct, Plaintiff has been damaged substantially in excess of $25,000.00.

168. Plaintiff retained an attorney in order to prosecute this action, and accordingly, Plaintiff is entitled to reasonable attorney fees and costs related thereto.

169. In committing the acts herein mentioned, Spectrum has acted arbitrarily, capriciously, maliciously and with reckless disregard for the rights and safety of the Plaintiff, and accordingly, Plaintiff is entitled to punitive and/or exemplary damages, in an amount to be determined at the time of trial.

WHEREFORE, Plaintiff requests relief as hereinafter provided below.

///

///

Complaint                                    33                          Case No.

## FOURTEENTH CAUSE OF ACTION

## VIOLATION OF CALIFORNIA UNRUH

## CIVIL RIGHTS ACT

170.   Plaintiff incorporates by reference all the allegations of this complaint as if more fully set forth herein.

171.   The Unruh Civil Rights Act specifically outlaws discrimination based on sex, race, color, religion, ancestry, national origin, age, disability, medical condition, genetic information, marital status, or sexual orientation.

172.   Spectrum denied Plaintiff full and equal accommodations, advantages, and privileges because of her age, sex, and medical condition.

173.   Spectrum denied and discriminated against Plaintiff by failing to accommodate her medical condition and discriminating against her because of her age and gender.

174.   A substantial motivating reason for Spectrum's conduct was Plaintiff's sex, age and medical condition.

175.   Plaintiff was harmed, and Spectrum's conduct was a substantial factor in causing Plaintiff's harm.

176.   As a result of Defendant's legally improper conduct, Plaintiff has been damaged substantially in excess of $25,000.00.

177.   Plaintiff retained an attorney in order to prosecute this action, and accordingly, Plaintiff is entitled to reasonable attorney fees and costs related thereto.

178.   In committing the acts herein mentioned, Spectrum has acted arbitrarily, capriciously, maliciously and with reckless disregard for the rights and safety of the Plaintiff, and accordingly, Plaintiff is entitled to punitive and/or exemplary damages, in an amount to be determined at the time of trial.

Complaint                                     34                          Case No.

WHEREFORE, Plaintiff prays for relief as set forth below.

## FOURTEENTH CLAIM FOR RELIEF

### Violation of Title I of the Americans with Disabilities Act of 1990

179.  Plaintiff, incorporates by reference all the allegations of this complaint as if more fully set forth herein.

180.  42 U.S.C.A. § 12112 prohibits an employer discriminating  against a qualified individual on the basis of disability in regards to terms, conditions, and privileges of employment.

181.  Plaintiff is a qualified individual by the disability she suffers from her back and neck injuries.

182.  Spectrum discriminated against Plaintiff  on the basis of her disability by failing to accommodate her disability.

183.  Spectrum utilized standards, criteria, and/ or methods of administration that have the effect of discrimination on the basis of disability, and/or not making reasonable accommodations to the known physical limitations of Plaintiff.

184.  Said accommodation would not impose an undue hardship on the operation of the business of Spectrum.

185.  Spectrum utilized discriminatory conduct toward  Ms. Desmond who was  disabled in that she had an injured neck and back.

186.  Spectrum refused to accommodate Ms. Desmond's medical condition.

187.  Plaintiff was harmed, and Spectrum's  conduct was a substantial factor in causing Plaintiff's  harm.

188.  As a result of Defendant's legally improper conduct, Plaintiff has  been damaged substantially in excess of $25,000.00.

189.  Plaintiff  retained  an  attorney  in  order  to  prosecute  this  action,  and

accordingly, Plaintiff is entitled to reasonable attorney fees and costs related thereto.    Plaintiff is entitled to recover prevailing party attorneys' fees pursuant to 42 U.S.C.A. § 12205 and by other statutory entitlements.

190.    In committing the acts herein mentioned, Spectrum has acted arbitrarily, capriciously, maliciously and with reckless disregard for the rights and safety of the Plaintiff, and accordingly, Plaintiff is entitled to punitive and/or exemplary damages, in an amount to be determined at the time of trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

## **PRAYER FOR RELIEF**

With respect to the preceding claims for relief, Plaintiff prays for relief as set forth below:

1.    That Defendant be ordered to pay to Plaintiff  a sum in excess of $100,000.00, the exact amount of which will be proven at the time of trial;

2.     That Defendant be ordered to pay to Plaintiff  a sum, the exact amount of which will be proven at the time of trial, for Plaintiff's lost earnings, both past and future;

3.    That Defendant be ordered to pay Plaintiff a sum in excess of $100,000.00, the exact amount of which will be proven at the time of trial, for Plaintiff's physical and mental pain, and for Plaintiff's personal property damage;

4.    That Plaintiff  be awarded exemplary damages, as permitted by law, as a result of Defendant willful and wanton misconduct in a sum in excess of $100,000.00;

5.    That Plaintiff  be awarded the attorney's fees and court costs that Plaintiff incurred in the prosecution of this Complaint; and

6.    Pursuant to Business and Professions Code section 17203, that defendants, their successors, agents, representatives, employees and all persons acting in

Complaint                                          36                          Case No.

concert with defendants be enjoined from committing acts of unfair competition as alleged in this complaint;

7. Pursuant to Business and Professions Code section 17203, that defendants make full restitution, or disgorgement of money or property unfairly obtained, to Plaintiff to restore all monies owing Plaintiff as a result of the violations of Business and Professions Code section 17200 et seq. alleged in complaint. This amount is in excess of $100,000 and will be established according to proof at trial;

8. Pursuant to Business and Professions Code section 17206, that the Court assess a civil penalty in the amount proven at the time of trial against Defendants and each of them for each violation of Business and Professions Code section 17200 et seq., as proved at trial;

9. Plaintiff recover its costs of suit and attorneys fees pursuant to Labor Code Section 1193.6; and

10. For liquidated damages pursuant to Labor Code section 1194.2, in an amount equal to the unpaid minimum wages proven at the time of trial

11. For an award of interest, including prejudgment interest, at the legal rate; and

12. Such other and further relief as the court may deem just and equitable in this matter.

Dated October 11, 2019

By _____/s/ Kevin Mirch_____
Kevin Mirch
Attorney for Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

Complaint                                      38                                    Case No.

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I email: contact.center@dfeh.ca.gov

GOVERNOR EDMUND G. BROWN JR.

DIRECTOR KEVIN KISH

October 13, 2018

Stacey Desmond

,

RE:   **Notice of Case Closure and Right to Sue**
DFEH Matter Number: 201810-03882413
Right to Sue: Desmond / Charter Communications

Dear Stacey Desmond,

This letter informs you that the above-referenced complaint was filed with the
Department of Fair Employment and Housing (DFEH) has been closed effective
October 13, 2018 because an immediate Right to Sue notice was requested. DFEH will
take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment
Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this
DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act,
whichever is earlier.

Sincerely,


Department of Fair Employment and Housing

| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO** | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| BRANCH NAME: | Central |
| TELEPHONE NUMBER: | (619) 450-7073 |

| PLAINTIFF(S) / PETITIONER(S): Stacy Desmond |
|---|
| DEFENDANT(S) / RESPONDENT(S): Charter Communications Inc |

| DESMOND VS CHARTER COMMUNICATIONS INC [IMAGED] | |
|---|---|
| **NOTICE OF CASE ASSIGNMENT**<br>**and CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>37-2019-00054306-CU-WT-CTL |

**CASE ASSIGNED FOR ALL PURPOSES TO:**

Judge:  Joel R. Wohlfeil                                    Department: C-73

**COMPLAINT/PETITION FILED:** 10/11/2019

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 03/20/2020 | 01:30 pm | C-73 | Joel R. Wohlfeil |

A case management statement must be completed by counsel for all parties or self-represented litigants and timely filed with the court at least 15 days prior to the initial case management conference. (San Diego Local Rules, Division II, CRC Rule 3.725).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR* options.

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT), THE ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730), A STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) (SDSC FORM #CIV-359), AND OTHER DOCUMENTS AS SET OUT IN SDSC LOCAL RULE 2.1.5.

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS: The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil cases consist of all civil cases except: small claims proceedings, civil petitions, unlawful detainer proceedings, probate, guardianship, conservatorship, juvenile, parking citation appeals, and family law proceedings.

COMPLAINTS: Complaints and all other documents listed in SDSC Local Rule 2.1.5 must be served on all named defendants.

DEFENDANT'S APPEARANCE: Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than 15 day extension which must be in writing and filed with the Court.) (SDSC Local Rule 2.1.6)

JURY FEES: In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

COURT REPORTERS: Court reporters are not provided by the Court in Civil cases. See policy regarding normal availability and unavailability of official court reporters at www.sdcourt.ca.gov.

*ALTERNATIVE DISPUTE RESOLUTION (ADR): THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO TRIAL, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. PARTIES MAY FILE THE ATTACHED STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (SDSC FORM #CIV-359).

**NOTICE OF CASE ASSIGNMENT**



# Superior Court of California
# County of San Diego

# NOTICE OF ELIGIBILITY TO eFILE
# AND ASSIGNMENT TO IMAGING DEPARTMENT

**This case is eligible for eFiling. Should you prefer to electronically file documents, refer to General Order in re procedures regarding electronically imaged court records, electronic filing, and access to electronic court records in civil and probate cases for rules and procedures or contact the Court's eFiling vendor at www.onelegal.com for information.**

**This case has been assigned to an Imaging Department and original documents attached to pleadings filed with the court will be imaged and destroyed. Original documents should not be filed with pleadings. If necessary, they should be lodged with the court under California Rules of Court, rule 3.1302(b).**

On August 1, 2011 the San Diego Superior Court began the Electronic Filing and Imaging Pilot Program ("Program"). As of August 1, 2011 in all new cases assigned to an Imaging Department all filings will be imaged electronically and the electronic version of the document will be the official court file. The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and on the Internet through the court's website.

You should be aware that the electronic copy of the filed document(s) will be the official court record pursuant to Government Code section 68150. The paper filing will be imaged and held for 30 days. After that time it will be destroyed and recycled. **Thus, you should not attach any original documents to pleadings filed with the San Diego Superior Court. Original documents filed with the court will be imaged and destroyed except those documents specified in California Rules of Court, rule 3.1806.** Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant or petitioner to serve a copy of this notice with the complaint, cross-complaint or petition on all parties in the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words **"IMAGED FILE"** in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.



# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION

CASE NUMBER: 37-2019-00054306-CU-WT-CTL     CASE TITLE: Desmond vs Charter Communications Inc [IMAGED]

**NOTICE:** All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:
   **(1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),**
   **(2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), *and***
   **(3) the Notice of Case Assignment form (SDSC form #CIV-721).**

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

## Potential Advantages and Disadvantages of ADR
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| **Potential Advantages** | **Potential Disadvantages** |
|---|---|
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | |
| • Gives parties more control over the dispute resolution process and outcome | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Preserves or improves relationships | |

## Most Common Types of ADR
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:**  A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:**  A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:**  A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute.  Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Other ADR Processes:**  There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.  Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

## Local ADR Programs for Civil Cases

**Mediation:**  The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

On-line mediator search and selection:  Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005).  The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:**  The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule 2.2.1 for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:**  The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience.  Refer to SDSC Local Rules Division II, Chapter III and Code Civ. Proc. § 1141.10 et seq or contact the Arbitration Program Office at (619) 450-7300 for more information.

More information about court-connected ADR: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:**  The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:**  To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

## Legal Representation and Advice

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at *www.courtinfo.ca.gov/selfhelp/lowcost*.

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS:     330 West Broadway | |
| MAILING ADDRESS:   330 West Broadway | |
| CITY, STATE, & ZIP CODE: San Diego, CA 92101-3827 | |
| BRANCH NAME:        Central | |

| PLAINTIFF(S):  Stacy Desmond |
|---|
| DEFENDANT(S): Charter Communications Inc |
| SHORT TITLE:   DESMOND VS CHARTER COMMUNICATIONS INC [IMAGED] |

| STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER: 37-2019-00054306-CU-WT-CTL |
|---|---|

Judge: Joel R. Wohlfeil                                                                    Department: C-73

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process.  Selection of any of these options will not delay any case management timelines.

☐ Mediation (court-connected)                        ☐ Non-binding private arbitration

☐ Mediation (private)                                      ☐ Binding private arbitration

☐ Voluntary settlement conference (private)      ☐ Non-binding judicial arbitration (discovery until 15 days before trial)

☐ Neutral evaluation (private)                          ☐ Non-binding judicial arbitration (discovery until 30 days before trial)

☐ Other (specify e.g., private mini-trial, private judge, etc.): _____
_____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____
_____
_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____           Date: _____

_____           _____
Name of Plaintiff                                                      Name of Defendant

_____           _____
Signature                                                              Signature

_____           _____
Name of Plaintiff's Attorney                                       Name of Defendant's Attorney

_____           _____
Signature                                                              Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385.  Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated:  10/15/2019                                           _____
                                                                        JUDGE OF THE SUPERIOR COURT

| SDSC CIV-359 (Rev 12-10) | STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION | Page: 1 |
|---|---|---|