UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACY DESMOND,<br><br>                              Plaintiff,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC.,<br>                              Defendant. | Case No.:  3:19-CV-2392-AJB-MDD<br><br>**ORDER GRANTING DEFENDANT CHARTER COMMUNICATIONS, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(Doc. No. 25.)** |

Presently pending before the Court is Defendant Charter Communications, Inc.'s ("Charter") motion for summary judgment, or alternatively, for partial summary judgment against Plaintiff Stacy Desmond ("Plaintiff"). (Doc. No. 25.) Plaintiff opposes Charter's motion. (Doc. No. 39.) Charter replied. (Doc. No. 43.) The Court held a hearing on Charter's motion on July 1, 2021. (Doc. No. 44.) For the reasons set forth below, the Court **GRANTS** Charter's motion for summary judgment in its entirety.

I.     **BACKGROUND**

    A.     **Plaintiff's Role at Charter**

This is an employment case, alleging discrimination, harassment, and retaliation. Plaintiff argues she was terminated on the basis of her gender and disability, and in retaliation for her complaints to Charter's Employee Relations Department. In defense,

Charter's asserts it terminated Plaintiff's employment because she failed to meet her sales quota for five consecution months. (Doc. No. 25-1 at 9.)

In November 2010, Plaintiff commenced employment with Time Warner Cable, Inc. ("Time Warner")—the predecessor entity to Charter. (Complaint ("Compl."), Doc. No. 1-2, ¶ 5.) Plaintiff was employed as a Direct Sales Representative ("DSR"), a door-to-door salesperson responsible for selling Charter's products and services. (*Id.* ¶ 6.) On August 8, 2014, Plaintiff began work in the Multi-Dwelling Unit Concierge ("MDU") position, in which she sold Charter's products and services to apartment buildings, condominiums, and other multi-dwelling communities. (Doc. No. 25-1 at 11.) Plaintiff states that the MDU position was less strenuous, as walking was confined to multi-dwelling units instead of residential neighborhoods.

In 2016, Charter merged with Time Warner. (*Id.*) This merger resulted in the restructuring of some of Charter's departments, including downsizing the MDU department. (*Id.*) As a result, Plaintiff was transferred back to the DSR department along with two other male MDU employees.[1] (*Id.*)

From November 16, 2016, through May 3, 2017, Plaintiff experienced medical issues related to a neck and shoulder injury she sustained in 2001, prior to working with Time Warner. (Plaintiff Desmond's Deposition ("Plaintiff's Depo."), Doc. No. 25-2, at 107:12-111:5.)[2] Due to these health issues, which Plaintiff alleges was exacerbated by Plaintiff's work as a DSR, Plaintiff was placed on a medical leave of absence at Charter. (*Id.*)

While still out on leave in March 2017, Plaintiff applied for an open MDU position. (Doc. No. 25-1 at 12.) At the time of her application, Plaintiff was medically restricted to

---

[1] Plaintiff argues that her transfer from the MDU role back to the DSR position constituted a demotion. (Doc. No. 39 at 21.)

[2] The page numbering for Plaintiff's deposition refers to the page number provided by counsel. All other page numbers referenced in this order refers to the CM/ECF number located at the top right of each document.

2

a part-time schedule with limited hours in the field, and limited walking. (*Id.*) The medical restrictions were: (1) Plaintiff would require a one-hour break for every three hours of field work; (2) Plaintiff could only carry ten pounds per hand; and (3) Plaintiff could only work five days a week. (*Id.* at 120:7-121:7.) Charter rejected Plaintiff's MDU application, and deemed Plaintiff unsuitable for the MDU job because the role was full-time, and required more activity in the field than Plaintiff's medical restrictions would permit. (Plaintiff's Depo., at 115:3-24.) On May 4, 2017, Plaintiff returned from leave to her prior DSR position—the same position she held before her leave of absence. (Doc. No. 25-1 at 13.)

### B.  Charter's Employment Policies

All DSRs at Charter, including Plaintiff, were required to meet a monthly sales quota of 23 sales. (*Id.*) According to Charter's policies, the transaction would only qualify as a sale if the installation of Charter's product or service occurred during the same cycle as the sale. (Doc. No. 39 at 17.) In addition to this quota, DSRs were required to meet a ten sales threshold in order to earn commission and avoid corrective action. (*See* Declaration of Jose Hernandez ("Hernandez Decl."), Doc. No. 25-2, at ¶ 8.) This ten sales minimum could be adjusted downwards if a DSR did not work a full month due to absences, leave, or vacation. (*Id.*) Charter alleges Saturdays were not required workdays for DSRs, however, many DSRs worked on Saturdays to meet their 23 monthly sales quota. (*Id.*)

To maintain employee performance, Charter implemented a strict discipline system. (*Id.* at 14.) Employees who failed to meet their minimum quotas were subject to a progressive discipline system including a "Coaching," a "Verbal Warning," a "Written Warning," a "Final Written Warning," and then ultimately, termination. (*See* Hernandez Decl. ¶ 10.) According to Charter, Plaintiff failed to meet her minimum quotas for the months of May, June, July, August, and September of 2017. (*Id.* ¶¶ 11–14.) After being issued a "Final Written Warning," Charter issued an Incident Investigation Report and termination recommendation on September 26, 2017. (*See id.* ¶ 14.) On October 13, 2017, Charter officially terminated Plaintiff for failing to meet her sales quota for five consecutive months. (*Id.*)

3

### C.     Plaintiff's Claims Against Charter

On September 22, 2017, prior to her termination, Plaintiff filed an Open Door complaint against Sales Manager Chris Workman ("Workman"), alleging disability discrimination, retaliation, and harassment on the basis of alleged offensive comments made by Workman. Then, on October 13, 2018, Plaintiff filed a complaint with the Department of Fair Employment and Housing ("DFEH"). (*See* Exhibit 13 to Declaration of Casey Morris.) The DFEH claim alleged harassment, gender and disability discrimination, and retaliation based on Plaintiff's requests for accommodation and complaints to management. (*Id.*) The DFEH issued an immediate Right to Sue notice, and took no further action on the DFEH charge. (*Id.*)

On October 11, 2019, Plaintiff filed a civil action in San Diego Superior Court. Plaintiff's Complaint asserts fifteen causes of action:

1. Breach of Implied Contract
2. Claims for Wages under the California Labor Code
3. Wrongful Termination
4. Retaliation in Violation of FEHA
5. Failure to Prevent Discrimination and Retaliation in Violation of Gov't Code §12940(k) *et. seq.*
6. Age Discrimination in Violation of FEHA
7. Gender Discrimination in Violation of FEHA
8. Intentional Infliction of Emotional Distress
9. Negligent Infliction of Emotional Distress
10. Defamation
11. Harassment in Violation of FEHA and Gov't Code § 12940(j)
12. Violation of California's Family Rights Act ("CFRA") & the Federal Family and Medical Leave Act of 1993 ("FMLA")
13. Violation of Business and Professions Code § 17200 et. seq.
14. Violation of the California Unruh Civil Rights Act
15. Violation of Title I of the Americans with Disabilities Act of 1990

The state action was removed to this Court on December 12, 2019. (Doc. No. 1.) No motion to dismiss was filed. Charter filed this instant motion for summary judgment on

4

April 9, 2021, which was opposed by Plaintiff. (Doc. No. 25.) The Court held a hearing on the motion on July 1, 2021. (Doc. No. 44.)

## II.    LEGAL STANDARDS

A court may grant summary judgment when it is demonstrated that there exists no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The party seeking summary judgment bears the initial burden of informing a court of the basis for its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" if it might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. *See Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." *Id.* If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine dispute as to any material fact actually exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party cannot "rest upon the mere allegations or denials of [its] pleading but must instead produce

5

evidence that sets forth specific facts showing that there is a genuine issue for trial." *See Estate of Tucker*, 515 F.3d 1019, 1030 (9th Cir. 2008) (internal quotation marks and citation omitted).

The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before a court must be drawn in favor of the opposing party. *See Stegall v. Citadel Broad, Inc.*, 350 F.3d 1061, 1065 (9th Cir. 2003). However, "[b]ald assertions that genuine issues of material fact exist are insufficient." *See Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007); *see also Day v. Sears Holdings Corp.*, No. 11–09068, 2013 WL 1010547, *4 (C.D. Cal. Mar. 13, 2013) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment."). Further, a "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'" *See Anderson*, 477 U.S. at 249–50; *see also Hardage v. CBS Broad. Inc.*, 427 F.3d 1177, 1183 (9th Cir. 2006) (same). If the nonmoving party fails to produce evidence sufficient to create a genuine dispute of material fact, the moving party is entitled to summary judgment. *See Nissan Fire & Marine*, 210 F.3d at 1103.

## III.   DISCUSSION

In its motion, Charter moves for summary judgment on all fifteen of Plaintiff's claims for relief. (Doc. No. 25.) As such, the Court will address each basis for summary judgment below. For the reasons provided herein, the Court **GRANTS** Charter's motion.

### A.   Evidentiary Objections

As a preliminary mater, both Plaintiff and Charter provide various objections to each other's evidence offered in connection with the present motion. (Doc. No. 39 at 12, 13, 15, 17; Doc. No. 43 at 5–7.) To the extent the Court relies on the disputed evidence, the Court will address the evidentiary objections below. However, insofar as the Court's decision does not depend on certain disputed evidence in this order, the Court need not reach those remaining evidentiary objections, and **OVERRULES** such objections as moot.

//

### B.     Plaintiff's Claims for Age Discrimination and Harassment

In its first argument, Charter contends Plaintiff's claim for age discrimination and age harassment fail for failure to exhaust the necessary administrative remedies. (Doc. No. 25-1 at 17.) To this point, the Court agrees.

In order to be entitled to file a civil action in a court based on the Fair Employment and Housing Act ("FEHA") violations, an employee must first exhaust administrative remedies. *See Blum v. Superior Court*, 141 Cal. App. 4th 418, 422 (2006). An employee can exhaust administrative remedies by filing a complaint with the DFEH within one year of the occurrence of the allegedly unlawful act, and obtaining a notice of the right to sue from the DFEH. *See Blum*, 141 Cal. App. 4th at 422; *see also Rao v. AmerisourceBergen Corp.*, No. CIV S-08-1527 DAD PS, 2010 WL 3767997, at *9 (E.D. Cal. Sept. 22, 2010) ("The timely filing of an administrative complaint is a prerequisite to the bringing of a civil action for damages under the FEHA."). It is the plaintiff's burden to plead and prove timely exhaustion of administrative remedies. *See Kim v. Konad USA Distribution, Inc.*, 226 Cal. App. 4th 1336, 1345 (2014) (citing *Garcia v. Los Banos Unified School Dist.*, 418 F. Supp. 2d 1194, 1215 (E.D. Cal. 2006)).

In her Complaint before this Court, Plaintiff alleges discrimination and harassment based on age because she was terminated at age of 45. (Compl. ¶ 98.) Charter moves for summary judgment, arguing that no age discrimination or age harassment claim was ever filed with the DFEH to satisfy administrative exhaustion. (Doc. No. 25-1 at 17–18.) In opposition, Plaintiff concedes that she did not use the terms "age discrimination" in her DFEH complaint to assert such a charge. (Doc. No. 39 at 20.) However, this is not fatal, according to Plaintiff, because an investigation of her DFEH complaint would have revealed age discrimination. (*Id.*) Plaintiff is mistaken.

Plaintiff relies on *Sandhu v. Lockheed Missiles & Space Co.* to argue that if an administrative investigation into an employee's DFEH claim would likely have encompassed the new allegations in the civil court complaint, exhaustion is satisfied. *See* 26 Cal. App. 4th 846, 859 (1994). However, *Sandhu* is not entirely helpful to Plaintiff

7

because that case also noted that to satisfy the exhaustion requirement, an administrative charge must be "like or reasonably related" to the conduct alleged in the civil complaint. *Id.* at 846. No explanation or authority is provided by Plaintiff to explain how age discrimination or age harassment is "like or reasonably related" to gender or disability discrimination. *See Shah v. Mt. Zion Hosp. & Med. Ctr.*, 642 F.2d 268, 271 (9th Cir. 1981) (dismissing the race, religion, and color allegations in plaintiff's complaint, as not sufficiently close to the sex and national origin claims in his administrative charge to have been investigated by the EEOC). Further, Plaintiff provides no reasons why her DFEH complaint, based on gender and disability discrimination, would reasonably trigger an investigation into discrimination on the basis of age. *See Rodriguez v. Airborne Express*, 265 F.3d 890, 898 (9th Cir. 2001) (holding that exhaustion of administrative remedies alleging discrimination on the grounds of being Mexican–American was insufficient to exhaust a claim of disability discrimination); *Stallcop v. Kaiser Found. Hosps.*, 820 F.2d 1044, 1050 (9th Cir. 1987) (holding that allegations of sex and age discrimination in civil complaint were not encompassed by charge filed with the DFEH alleging only national origin discrimination). Indeed, there is no evidence supporting the conclusion that Plaintiff's gender and disability discrimination claims were in any way related or intertwined with Plaintiff's claims based on age.

In an attempt to be excused from the administrative exhaustion requirement, Plaintiff notes that concealment was involved in this matter. (*See* Doc. No. 39 at 20.) Specifically, Plaintiff alleges that Charter fabricated accounting records of sales to justify the termination of Plaintiff. (*Id.*) However, Plaintiff does not provide a sufficient nexus to explain how this purported fabrication is in any way related to Plaintiff's age discrimination claim. And, as explained in depth below, there is no evidence of any fabrication or concealment concerning Charter's sales records. Neither does Plaintiff provide any evidence substantiating her allegations of age discrimination or age harassment. In fact, there is no evidence in the record that Plaintiff provided notice to Charter as to her age discrimination grievance during her employment or at any point thereafter. Because neither

8

age discrimination nor age harassment was alleged in Plaintiff's DFEH charge, she fails to establish that she administratively exhausted her age discrimination and harassment claims for this pending action. For all these reasons, summary judgment is **GRANTED** to Charter on Plaintiff's claims to the extent they are premised on age discrimination or age harassment.

### C. Plaintiff's Disability Discrimination Claim

Next, the Court turns to arguments relating to Plaintiff's FEHA disability discrimination claim. A prima facie case for disability discrimination under FEHA based on grounds of physical disability requires that Plaintiff: (1) establish that she suffers from a disability; (2) is otherwise qualified to do her job; and (3) was subject to an adverse employment action because of her disability. *See Ravel v. Hewlett–Packard Enter., Inc.*, 228 F. Supp. 3d 1086, 1095 (E.D. Cal. 2017); *Faust v. California Portland Cement Co.*, 150 Cal. App. 4th 864, 886 (2007). Under the FEHA, a "physical disability" is any "physiological disease, disorder or condition" that both affects a specific bodily system and limits a major life activity. *See* Cal. Gov't Code § 12926(m).

Because the FEHA is an anti-discrimination law modeled after the federal Americans with Disabilities Act ("the ADA"), courts analyze FEHA claims under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973) ("*McDonnell Douglas*"). Accordingly, on a motion for summary judgment brought against such a cause of action, Plaintiff bears the burden of establishing a prima facie case of discrimination based upon physical disability. The burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action. *See Ellis v. City of Reedley*, No. CVF0501474 AWI SMS, 2007 WL 1098571, at *9 (E.D. Cal. Apr. 12, 2007). Once the employer has done so, the plaintiff must offer evidence that the employer's stated reason is either false or pretextual, or evidence that the employer acted with discriminatory animus, or evidence of each which would permit a reasonable trier of fact to conclude the employer intentionally discriminated. *Id.*

Here, unchallenged is Plaintiff's assertion that she suffers from a disability.

9

However, Charter argues Plaintiff cannot establish a prima facie case because there is a legitimate, nondiscriminatory justification for Plaintiff's termination. (*See* Doc. No. 25-1 at 20.) To support this assertion, Charter points to evidence showing that Plaintiff was terminated for poor performance after failing to meet her sales quota for five consecutive months. (*Id.*)

In an effort to create a genuine dispute of material fact, Plaintiff challenges her sales quota, arguing that Charter orchestrated a scheme to falsify her sales record as a pretext to conceal its discriminatory animus on the basis of disability. (Doc. No. 39 at 21.) Plaintiff points to Exhibit 15, attached to the declaration of Plaintiff's counsel, Marie Mirch, which purports to be a print-out of internal sales figures from a Charter portal "contain[ing] actual accounting records of each sale, the number of the contracting party, dates of the transactions and installations." (*Id.*) Plaintiff then creates a table based on these sales figures, which compares Charter's sales quota and what Charter calculated as Plaintiff's completed sales, with what Plaintiff believes the sales quota *should have been*, and Plaintiff's actual sales *according to Plaintiff*. The table, redacted for brevity, is provided below:

| Sales Cycle | Days in Cycle | Adjusted Days in Cycle | Adjusted Sales Quota | MSJ: Sales Quota | Actual Sales | MSJ: Actual Sales |
|---|---|---|---|---|---|---|
| April 22 – May 21 | 20 | 7 | 2.45 | 5 | 5 | 1 |
| May 22 – June 21 | 23 | 23 | 7 | 10 | 7 | 5 |
| June 22 – July 21 | 22 | 22 | 7 | 10 | 7 | 7 |
| July 22 – Aug. 21 | 21 | 21 | 10 | 10 | 12 | 9 |

10

| Aug. 22 – Sept. 21 | 23 | 23 | 6 | 6 | 10 | 4 |
|---|---|---|---|---|---|---|
| Sept. 22 – Oct. 21 | 21 | 16 | 7.6 | Not Stated | 11 | Not stated |

(*Id.* at 8.)

### 1. Evidentiary Objections

As a threshold matter, Charter mounts evidentiary objections to Plaintiff's evidence offered in support of her claim that Charter falsified sales records to justify Plaintiff's termination. (Doc. No. 43 at 5.) Particularly, Charter challenges Plaintiff's Exhibit 15, a print-out document which Plaintiff claims she obtained from Charter's online portal. (Doc. No. 39 at 21.) The Mirch declaration also states that this document was received from Plaintiff, and maintained at counsel's office during the normal course of business in this litigation. (*See* Mirch Decl., Doc. No. 39-4 at 4.) In its objection, Charter argues that Exhibit 15 lacks foundation and is not properly authenticated because it does not contain the dates as to when the document was printed, or what the information in it represents. (Doc. No. 43 at 5.) The Court agrees that there are circumstances calling into question Exhibit 15. For one, in her declaration, Plaintiff stated that Charter had "took away access to track the sales [she] had made." (Plaintiff's Decl., Doc. No. 39-1, ¶ 34.) Then, at Plaintiff's deposition, Plaintiff also stated that she was unable to track her sales because Charter removed access. (*See* Plaintiff's Depo., Doc. No. 25-2, at 132:19-133:19.) When pressed on this issue at the July 1, 2021 motion hearing, Plaintiff failed to clearly lay the foundation for Exhibit 15, or prove its authenticity. Based on the conflicting information provided by Plaintiff, the Court questions the reliability of Plaintiff's offered evidence. Because Plaintiff has failed to properly alleviate the Court's concerns in the papers or at the hearing, the Court **SUSTAINS** Charter's objection to Exhibit 15 of the Mirch

11

declaration. [3]

## 2.    Merits of Plaintiff's Disability Discrimination Claim

Turning back to the merits of the case, in response to Charter's challenge of Plaintiff's disability discrimination claim, Plaintiff argues there is a triable issue of fact as to whether Plaintiff's minimum threshold was properly adjusted. (Doc. No. 39 at 15.) Plaintiff appears to argue that Charter's justification for the termination was based on an erroneously calculated sales quota. (*Id.*) Where an employer offers a legitimate, non-discriminatory reasons for the adverse employment decision, the plaintiff must produce "substantial, responsive evidence" tending to suggest that the employer's showing was untrue. *See Cucuzza v. City of Santa Clara*, 104 Cal. App. 4th 1031, 1038–39 (2002). Plaintiff has failed to produce such "substantial, responsive" evidence. To attack Charter's decision to terminate Plaintiff's employment, Plaintiff disputes the appropriate sales quota, but offers no competent evidence supporting how the sales quota was incorrectly calculated. Moreover, Plaintiff offers scant evidence to validate her claims that the termination was pretextual, and based on discriminatory intent. In fact, Plaintiff's own deposition testimony confirms she does not believe she was treated differently than other non-disabled employees. Rather, it appears that Plaintiff's actual grievance is that she felt that she should have been given more time to meet Charter's expectations. When posed the question, "[h]ow were you treated differently than non-disabled employees?" (Plaintiff's Depo., at 141:20-21), Plaintiff responded, "[t]reated differently? No. It wasn't—no, that's my point. Is I wasn't—I don't—I should have been given a better chance at succeeding, in my position, because I was gradually succeeding." (*Id.* at 144:22–25.) Plaintiff's

---

[3] Even if the Court were to find that Plaintiff properly laid the foundation for, and properly authenticated Exhibit 15, Charter correctly points out that any calculations as to Plaintiff's quota or actual sales based on the information extracted from Exhibit 15 would be unreliable. Specifically, Exhibit 15 includes sales transactions which were ultimately cancelled, and not installed. (Doc. No. 43 at 5.) Charter reiterates that only sales which resulted in installation of Charter's products within the same cycle counted towards Plaintiff's sales quota. Because Exhibit 15 does not account for whether the sales were actually installed, any corresponding data calculated would necessarily be unreliable. (*Id.* at 6.)

12

disagreement with Charter's method of calculating sales quota is not enough to show an inference of discriminatory intent. *See Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 746 (9th Cir. 2011) (it is insufficient to show that the employer's decision was "wrong, mistaken, or unwise") (citation and quotation marks omitted).

Because Plaintiff's grievance about Charter's business practices is insufficient to raise the inference of discriminatory animus, Plaintiff fails to meet her burden in rebutting Charter's legitimate, non-discriminatory reason for the termination. The Court **GRANTS** summary judgment in favor of Charter on Plaintiff's disability discrimination claim.

### D.   Plaintiff's ADA Reasonable Accommodation Claim

Related to Plaintiff's disability discrimination claim, Plaintiff also claims that Charter failed to provide reasonable accommodation for her disability. The ADA requires an employer to make reasonable accommodations for an employee with a disability. *See* 42 U.S.C. § 12112(b)(5); *Dunlap v. Liberty Nat. Prods*, *Inc.*, 878 F.3d 794, 799 (9th Cir. 2017) (internal quotations and citations omitted). To prevail on a failure to accommodate claim under the ADA, a plaintiff must prove that "(1) she is disabled within the meaning of the ADA; (2) she is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) she suffered an adverse employment action because of her disability." *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) (quotation and citation omitted). A reasonable accommodation may include "job restructuring, part-time or modified work schedules, . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). Whether an accommodation is reasonable is ordinarily a question of fact, requiring a "fact-specific, individualized analysis of the disabled individual's circumstances and the potential accommodations." *Dunlap*, 878 F.3d at 799. An employer, however, does not have a duty to "provide an employee the accommodation [s]he requests or prefers, the employer need only provide some reasonable accommodation." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002).

//

13

Here, Plaintiff claims she was denied reasonable accommodation because Charter failed to adjust her sales quota even though she was legally restricted to work only six hours a day. Plaintiff also asserts that Charter failed to offer her the MDU position upon her return from leave. (Doc. No. 39 at 23.) Plaintiff's claims both fail. First, with regard to the assertion that Charter should have lowered the sales quota, Plaintiff has not shown that the lowering of Plaintiff's sales quota would have been a reasonable accommodation. Indeed, as an exempt employee, Plaintiff was not restricted to working six hours per day. Instead, the medical restriction only required that Plaintiff take a one-hour break for every three hours worked in the field. (*See* Exhibit 12 to Decl. of Kasei Reed, Doc. No. 25-2.) Because Plaintiff exercised control over when she could rest and work, Plaintiff's argument that was she legally only able to work six hours a day, is without merit. As such, Plaintiff has not shown how a reduction in her sales quota would have been a reasonable accommodation.

Furthermore, with regard to Plaintiff's argument that Charter should have provided her the MDU role, Charter was not obligated to offer her that position as an employer does not have a duty to "provide an employee the accommodation [s]he requests or prefers, the employer need only provide some reasonable accommodation." *Zivkovic*, 302 F.3d at 1089. As shown by the evidence, Plaintiff did not qualify for the MDU position because Plaintiff's work restrictions prevented her from performing the essential functions of that job—working a full time schedule out on the field. (*See* Desmond Depo. 113:16-116:22; Reed Decl. ¶ 9; Ex. 11). As soon as Plaintiff was released to return to a five day per week schedule, Charter promptly returned Plaintiff to her DSR position as it was able to accommodate her new schedule.

Moreover, substantial evidence supports the conclusion that Charter did in fact provide reasonable accommodation by (1) granting Plaintiff a six-month leave of absence when Plaintiff was unable to work, (2) offering to transfer Plaintiff to other positions when Plaintiff was authorized to return to work with restrictions that rendered her unable to resume the DSR position, (3) not requiring Plaintiff to work on Saturdays. (Doc. No. 25-1

14

at 24–25.) Charter engaged Desmond in the interactive process during her leave of absence and tried to assist her with finding a different position which would have enabled Desmond to return to work. (Desmond Depo. 111:8-118:24; Reed Decl. ¶¶ 7, 8; Ex. 11).

Accordingly, the Court **GRANTS** Charter's motion for summary judgment as to Plaintiff's failure to provide reasonable accommodation claim.

### E.    Plaintiff's Gender Discrimination Claim

"To establish a prima facie case, a plaintiff must offer evidence that 'give[s] rise to an inference of unlawful discrimination.' . . . 'The prima facie case may be based either on a presumption arising from the factors such as those set forth in *McDonnell Douglas*. . ., or by more direct evidence of discriminatory intent.'" *Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1148 (9th Cir. 1997) (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)). "Generally, the plaintiff must provide evidence that: (1) [s]he was a member of a protected class, (2) [s]he was qualified for the position [s]he sought or was performing competently in the position [s]he held, (3) [s]he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive," *e.g.*, similarly-situated individuals outside her protected class were treated more favorably. *Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317, 355 (2000). A plaintiff also "must prove by a preponderance of the evidence that there was a 'causal connection' between [her] protected status and the adverse employment decision." *Mixon v. Fair Employment & Housing Comm'n*, 192 Cal. App. 3d 1306, 1319 (1987).

There is no doubt that Plaintiff is a member of a protected class as a female, and that she suffered an adverse employment action. But there is no evidence of discriminatory motive and no causal connection between Plaintiff's protected status and the decision to terminate her employment. To substantiate her claim, Plaintiff argues she was replaced by a male for the MDU position. (Doc. No. 39 at 23.) This naked assertion, without more, is insufficient to demonstrate an inference of unlawful discrimination. Also weakening this inference is that two other men were also transferred from the MDU role along with

15

Plaintiff. (*See* Plaintiff's Depo., at 38:2-7 (Plaintiff stating that "Joshua and Larry" were moved from the MDU position to the DSR position at the same time that Plaintiff was transferred). Plaintiff also contends she was replaced by a male for the MDU role. But Plaintiff's deposition refutes these allegations. Indeed, Plaintiff confirmed that prior to her being transferred from the MDU role to the DSR position, there were ten total employees on the MDU team. (*Id.* at 39:12-16.) With the transfer of Plaintiff and two other males, seven employees remained on the MDU team. (*Id.*) But contrary to Plaintiff's assertion that she was replaced by a male, Plaintiff also testified that no new individuals were hired onto the MDU team after Plaintiff's transfer. (*Id.* at 39:17-21.)

In addition, Plaintiff argues that other female employees working at Charter reported gender discrimination. Specifically, Plaintiff claims Diane Medrano, a Direct Sales supervisor, "complained about a male employee poaching her customers" and she "decided to resign because upper management did nothing to stop the that intrusion." (*See* Exhibit 90 to Mirch Decl.) However, Exhibit 90, the interview notes of Medrano, does not reveal any evidence of discriminatory intent or gender-specific complaints. Instead, upon review of the document, the Court notes that the exhibit only mentions that a supervisor—who just so happened to be male—was encroaching on Medrano's sales territory. (*Id.*) Medrano's complaint does not appear to focus on gender at all.

Plaintiff also alleges that Chris Workman, a female, filed a complaint against her supervisor. (Doc. No. 39 at 13.) Plaintiff cites to Exhibit 40 to support this contention. Again, the evidence shows that the complaints made by Workman were wholly unrelated to gender discrimination and do not even touch on the issue of gender. Notably, in Exhibit 40, Charter's HR Specialist Kasei Reed stated that she believed Workman's complaint was the result of a "personality clash" between Workman and the male supervisor. (*See* Exhibit 40 to Mirch Decl.) Nowhere did Reed indicate that the dispute involved gender discrimination.

And even more telling of the lack of discriminatory animus, five of the seven individuals who ultimately approved Plaintiff's termination were women. (Reed Decl.,

16

Doc. No. 25-2, ¶ 14 ("I, along with Stacia Erway, the Human Resources Director, Daymion Montañez, the Senior Human Resources Director, Chris Workman, the Sales Manager, Mutari Madden, the Sales Director, Gabriella Borrego, the Senior Director of Sales, and Amanda Field, the Vice President of Sales, all approved Desmond's termination."). Case law authority shows that any inference of discrimination is undermined when the decision-maker is a member of the same protected class. *See, e.g.*, *Coghlan v. American Seafoods Co. LLC*, 413 F.3d 1090, 1096–97 (9th Cir. 2005) (affirming summary judgment for employer where the person who engaged in the allegedly discriminatory conduct was of the same protected category as the plaintiff); *Mattsson v. Home Depot, Inc.*, No. 11CV0533 AJB BLM, 2012 WL 2342948, at *4 (S.D. Cal. June 20, 2012) (same).

Because Plaintiff has failed to establish any evidence as to gender discrimination, the Court **GRANTS** summary judgment in favor of Charter as to Plaintiff's gender discrimination claim.

### F.    Plaintiff's Retaliation Claim

The FEHA makes it unlawful for an employer to "discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov't Code § 12940(h). To assert a prima facie claim for retaliation under FEHA, Plaintiff must plead that: (1) she engaged in "protected activity," (2) the employer subjected her to an "adverse employment action," and (3) there is a "causal link" between the protected activity and the employer's action. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005); *see also Doe v. Dep't of Corr. & Rehab.*, 43 Cal. App. 5th 721, 734 (2019); *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). In determining FEHA retaliation claims in the context of motions for summary judgment, courts apply the same burden-shifting analysis as for determining discrimination claims under FEHA. *See Yanowitz*, 36 Cal. 4th at 1042 (citing *McDonnell Douglas*, 411 U.S. at 802–05).

The "protected activity" Plaintiff claims she engaged in was asserting various complaints against Charter, including (1) a complaint relating to the ADA, (2) a MDU application complaint, (3) a work phone disconnection complaint, (4) a complaint regarding the failure to disclose that Plaintiff's leave of absence extension was rejected, (5) a complaint regarding Charter's poor services and equipment failures, (6) a complaint regarding working in violation of physician's orders, (7) complaint regarding permits, (8) a complaint against vacations, and (9) Plaintiff's Open-Door complaint. (Doc. No. 39 at 15–16.)

Under a FEHA retaliation claim, "protected activity" includes an employee's formal or informal complaint to a supervisor regarding unlawful discrimination, and accordingly, an employer's adverse actions taken against the employee after such complaints may constitute retaliation. *Passantino v. Johnson & Johnson Consumer Prod., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000) (citing *Moyo v. Gomez*, 40 F.3d 982 (9th Cir. 1994) (allowing retaliation claim based on informal protest of allegedly discriminatory policy)). However, "complaints about personal grievances or vague or conclusory remarks that fail to put an employer on notice as to what conduct it should investigate will not suffice to establish protected conduct." The employee must "have alerted his employer to his belief that discrimination, not merely unfair personal treatment, had occurred." *Mayfield v. Sara Lee Corp.*, 2005 WL 88965, *8 (N.D. Cal. 2005) (citing *Jurado v. Eleven–Fifty Corp.*, 813 F.2d 1406, 1412 (9th Cir. 1987) (finding employee complaint regarding scheduling change not protected activity)); *see also Lanagan v. Santa Cruz Cty Metro Transit Dist.*, 2010 WL 1838984, at *5–6 (N.D. Cal. 2010) (reporting co-employee's negligence resulting in accidents was "not protected activity [under FEHA] because it has nothing to do with the FEHA's prohibitions"); *Lewis v. City of Fresno*, 834 F. Supp. 2d 990, 1002 (E.D. Cal. 2011) (complaining of allocation of overtime assignments in an email or informal grievance to superior was not a protected activity under FEHA).

Although Plaintiff attempts to highlight several grievances lodged against Charter, a closer review of these complaints reveal that all of these grievances were not actually

18

FEHA-protected complaints, but instead questions Plaintiff raised in various emails to Charter employees. These questions are insufficient to alert Charter as to Plaintiff's belief that discrimination occurred. For example, Plaintiff alleges that she lodged an ADA complaint, citing to Exhibit 39 of the Mirch declaration. However, Exhibit 39 is only an email from Plaintiff to Reed in which Plaintiff questions, "ADA contact person says the department has not accepted the restrictions?? I don't know who to talk to about this." (Exhibit 39 to Mirch Decl.) As for another example, Plaintiff alleges she complained about the rejection of her MDU position application, citing to Exhibit 63 to the Mirch declaration. But a review of Exhibit 63 only reveals an email from Plaintiff to Reed wherein Plaintiff asks, "This email says I am not eligible? Movement guidelines?? What does this mean?" Again, this question for clarification does not rise to the level of notice necessary to alert Charter as to ongoing discrimination.

Plaintiff also argues she was retaliated against for the filing of an Open-Door complaint to Charter's Employee Relations Center. In this complaint, Plaintiff had alleged disability discrimination, retaliation, and harassment against Chris Workman. However, as illuminated by Charter, Plaintiff's failure to meet the minimum threshold for the fiscal month of September was the ultimate reason for the termination, and this had occurred **before** Plaintiff filed her Open-Door complaint. (Doc. No. 25-1 at 21); *Buhl v. Abbott Lab'ys*, 817 F. App'x 408, 411 (9th Cir. 2020) ("[Plaintiff's] performance problems and misconduct long predated the particular whistleblower complaint."). Accordingly, this Open-Door complaint cannot serve as the basis of a retaliation claim.

As Plaintiff has not established any evidence of retaliation, the Court **GRANTS** summary judgment in favor of Charter.

### G.    Plaintiff's CFRA and FMLA Claims

Next, Charter argues Plaintiff's California Family Rights Act ("CFRA") and Family and Medical Leave Act ("FMLA") claims fail because it provided Plaintiff with the proper amount of medical leave. (Doc. No. 25-1 at 25.) In opposition, Plaintiff does not dispute that she received the proper amount of leave, but responds that her CFRA claim is in fact

19

a CFRA retaliation claim. (Doc. No. 39 at 24.)

The FMLA and CFRA both require the plaintiff to make a prima facie case of retaliation. *Nelson v. United Techs.*, 74 Cal. App. 4th 597, 613 n.5 (1999). To prevail on a claim under the FMLA and CFRA, a plaintiff must plead and prove: (1) that the plaintiff was eligible for CFRA leave; (2) that the plaintiff took CFRA leave; (3) that the plaintiff suffered an adverse employment action because she exercised her right to take CFRA leave; and (4) that there was a causal connection between the adverse employment action and the plaintiff's exercising of her CFRA rights. *Dudley v. Dep't of Transp.*, 90 Cal. App. 4th 255, 261 (2001).

However, as considered directly above, the undisputed facts show that Charter terminated Plaintiff for failing to meet her sales quota. And, Plaintiff has not submitted evidence tending to show that retaliation had occurred. As such, even if Plaintiff could establish a causal link between her protected activity and the adverse employment action, she cannot defeat Charter's showing that it terminated Plaintiff for non-discriminatory purposes. *See Rincon v. Am. Fed'n of State, Cty. and Mun. Employees*, No. 12-4158 MEJ, 2013 WL 4389460, at *15 (N.D. Cal. Aug. 13, 2013) (denying retaliation claim where defendant established it had non-retaliatory reasons for adverse employment actions).

Accordingly, the Court **GRANTS** Charter summary judgment as to the FMLA and CFRA claims to the extent they are premised on Plaintiff's retaliation claim.

### H.    Plaintiff's Harassment Claim

#### 1.    The Statute of Limitations on Plaintiff's Gender Harassment Claim

In her Complaint, Plaintiff claims that she was harassed based on her gender and disability. Charter first challenges Plaintiff's FEHA gender harassment claim as time-barred by the applicable statute of limitations. (Doc. No. 25-1 at 25.) Charter asserts that at the time of Plaintiff's filing of her DFEH charge, the statute of limitations to file a written charge was one-year after the alleged gender harassment. *See* Cal. Gov't Code § 12960(d). Charter goes on to explain that Plaintiff's gender harassment claim is based on statements

that were allegedly made by her former supervisor, Steven Pereda, on or before October 19, 2016. (*Id.* at 17.) According to Charter, since Plaintiff did not file her complaint with the DFEH until October 13, 2018, Plaintiff's gender harassment claim is time-barred. (*Id.*) In her response, Plaintiff states that the statute of limitations did not begin to run on all causes of action until Plaintiff was terminated. (Doc. No. 39 at 25.) Plaintiff avers the wrongful conduct against Plaintiff began in 2016 and continued until she was terminated on October 13, 2017. (*Id.*)

If a complaint is not filed within the statute of limitations, those claims are then barred. However, under the continuing violation doctrine, "an employer is liable for actions that take place outside the limitations period if these actions are sufficiently linked to unlawful conduct that occurred within the limitations period." *Yanowitz*, 36 Cal. 4th at 1056. "[T]he FEHA statute of limitations begins to run when an alleged adverse employment action acquires some degree of permanence or finality," but not sooner. *Id.* at 1059. The continuing violation doctrine is premised on the principle that "the employer that creates or permits a persistent pattern of harassment or failure to reasonably accommodate that makes its working conditions unfavorable to the employee . . . cannot complain of delay when the employee retains employment in hopes that informal conciliation will succeed." *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 822 (2001); *Yanowitz*, 36 Cal. 4th at 1059 (quoting *Richards*, 26 Cal. 4th at 823). "'[P]ermanence' . . . should properly be understood to mean the following: that an employer's statements and actions make clear to a reasonable employee that any further efforts at informal conciliation to obtain reasonable accommodation or end harassment will be futile." *Richards*, 26 Cal. 4th at 823.

As to the gender harassment claim only, Charter correctly notes that Pereda stopped supervising Plaintiff on October 19, 2016, the date when Plaintiff was transferred back to

the DSR position. (*See* Erway Decl.[4] ¶ 7.) Jose Hernandez was then the supervisor of Plaintiff's DSR team starting on October 19, 2016 through Plaintiff's termination on October 13, 2017. (*Id.* ¶ 14.; Hernandez Decl. ¶ 1 ("I was Plaintiff Stacy Desmond's direct supervisor when Desmond was a Direct Sales Representative ("DSR") from October 2016 through her termination in October 2017.")). Plaintiff did not file her DFEH complaint until October 13, 2018, well over a year after Pereda stopped supervising Plaintiff. There are no other allegations of gender harassment by any other individuals other than Pereda, and there are no allegations of any continued gender harassment after Plaintiff was transferred back to the DSR role. (Plaintiff's Depo., Doc. No. 25-2, at 148:6-10 (Plaintiff answering "no" to the question "Did anybody else ever harass you based on your gender?").) Thus, the continuing violation doctrine does not apply to save Plaintiff's gender harassment claim as there is no evidence of any continued gender harassment. This claim is thus time-barred.

### 2.    Plaintiff's Disability Harassment Claim

As the Court has already concluded that Plaintiff's age and gender harassment claims are barred, the Court will address Plaintiff's disability harassment claim. To establish a claim for harassment under FEHA, a plaintiff must demonstrate each of the following: (1) she is "a member of a protected group"; (2) she was "subjected to harassment because she belonged to this group"; and (3) the alleged harassment "was so severe that it created a hostile work environment." *Lawler v. Montblanc N.A., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013). Harassment under FEHA "focuses on situations in which the social environment of

---

[4] Plaintiff argues that the declaration of Stacia Erway should be stricken because Erway was not listed on Charter's Rule 26 disclosure of witnesses. (Doc. No. 39 at 12.) When pressed on this issue at the July 1, 2021 motion hearing, Charter responded that although no supplemental disclosures were made, Erway was disclosed in discovery responses. This is not fatal, however, because "[t]he duty to supplement is satisfied when the additional or corrective information has been otherwise made known during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1). Thus, disclosure of Erway's identity in discovery responses was satisfactory supplementation to the initial Rule 26 disclosures. According, Plaintiff's evidentiary objections to the declaration of Erway is **OVERRULED**.

the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 706 (2009) (emphasis omitted). Liability for harassment may arise when the plaintiff's workplace is "permeated" with conduct directed at that person that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 279 (2006) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). However, FEHA is not a "civility code," and it does not bar conduct just because it may be offensive. *Id.* at 295. Additionally, there must be a "concerted pattern of harassment of a repeated, routine or a generalized nature." *Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal. 4th 121, 130–31 (1999); *see also Hughes v. Pair*, 46 Cal. 4th 1035, 1043 (2009) (unless the harassing conduct is "severe in the extreme," there is no recovery "for harassment that is occasional, isolated, sporadic, or trivial.") (quoting *Lyle*, 38 Cal. 4th at 283–84).

As for disability harassment, Plaintiff only alleges two statements that can reasonably be considered related to her disability. First, Plaintiff alleges that "she was made fun of for crying because of pain related to her disability." (Doc. No. 39 at 26.) Specifically, Plaintiff alleges that Workman nicknamed her "Waterfalls." (*Id.*) Plaintiff points out that Workman stated in an interview, "[w]hen she first met me, she hugged me, she started crying because she was in pain because of her neck." (*Id.*) However, Workman also stated that Plaintiff was given this nickname as a "term of endearment" because Plaintiff "cries all the time for everything." (Exhibit 92 to Mirch Decl.) While Plaintiff has raised an arguably unprofessional statement inappropriate for the workplace, Plaintiff has not adequately shown that this nickname is related to her disability in such a way that is sufficiently severe or pervasive. Plaintiff points to Workman's statement during an interview regarding Workman's first encounter with Plaintiff, but does not explain how this nickname is sufficiently associated with Plaintiff's disability, or that Plaintiff was even aware that the nickname was related to her disability. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[S]imple teasing, offhand comments, and isolated incidents

23

(unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment'" in the context of a Title VII suit. (internal citations omitted)); *Lee v. Eden Med. Ctr.*, 690 F. Supp. 2d 1011, 1025 (N.D. Cal. 2010) ("[Plaintiff] alleges stray remarks and offhand comments which do not rise to the level of a hostile work environment.").

Second, Plaintiff argues that "she was ridiculed about her weight" by Workman. (Doc. No. 39 at 26.) Plaintiff cites to Exhibit 18 of the Mirch declaration. But Exhibit 18, notes from the interview of Jose Hernandez revealed that Hernandez believed "the comment was not directed at [Plaintiff] but [Hernandez] but [Plaintiff] took it that way because she was there. . ." (Exhibit 18 to Mirch Decl.) Furthermore, Hernandez qualifies that "[Workman] may not have mentioned that I am overweight but [Workman] said her husband was overweight too." (*Id.*) In any event, relevant to this statement, Plaintiff does not allege that being overweight was part of, or exacerbated, her shoulder and neck disability.

Finally, Plaintiff's other complaints about her treatment at work have no relation to her disability: she claims that she was denied vacation time, was told that she could be terminated for anything at any time, was denied her MDU role, and that Hernandez encouraged her to knock on additional doors to meet her sales quota. (Doc. No. 39 at 26.) Setting aside that Plaintiff has not shown that these actions are sufficiently severe or pervasive to constitute harassment, Plaintiff does not contend that this treatment was any different from the way non-disabled employees were treated. *See Arteaga*, 163 Cal. App. 4th at 344.

Accordingly, the Court **GRANTS** summary judgment to Charter on Plaintiff's disability harassment claim.

### I.    Plaintiff's Derivative Claims

Next, Charter argues that Plaintiff's derivative claims—(1) wrongful termination, (2) failure to prevent retaliation, discrimination, and harassment, (3) intentional infliction of emotional distress ("IIED"), and (4) negligent infliction of emotional distress

24

("NIED")—fail because they are derivative of Plaintiff's underlying discrimination, retaliation, and harassment claims. (Doc. No. 25-1 at 28.) The Court agrees. Because Plaintiff has not shown she can prevail on her discrimination, retaliation, and harassment claims, the Court **GRANTS** summary judgment to Charter as to all claims which are premised on discrimination, retaliation, and harassment. *Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1150 (9th Cir. 2017) ("Merrick's other claims are derivative of his FEHA age discrimination claim, and so necessarily fail along with that claim."); *Tumblin v. USA Waste of California, Inc.*, No. CV 16–2902 DSF (PLAx), 2016 WL 3922044, at *8 (C.D. Cal. July 20, 2016) (a plaintiff failing to state a claim for age discrimination under FEHA could not state a derivative claim of wrongful termination in violation of public policy); *Sneddon v. ABF Freight Syss.*, 489 F. Supp. 2d 1124, 1131 (S.D. Cal. 2007).[5]

### J.    Plaintiff's Breach of Implied Contract Claim

Charter moves for summary judgment on Plaintiff's claim for breach of implied contract. In Plaintiff's breach of implied contract claim, Plaintiff alleges "[i]mplicit in the contract of employment is Spectrum's obligation to follow all state, federal, and/or industry rules (including its own compliance with the same rules & regulations) regarding workplace safety and employment practices." (Compl. ¶ 74.) Charter argues it is entitled to summary judgment because it had an integrated written at-will policy, which stated that Plaintiff could be terminated without cause. (Doc. No. 25-1 at 29–30.)

A plaintiff "cannot state a claim for breach of implied contract by relying exclusively on a policy document containing an express disclaimer" of a contractual relationship. *See*

---

[5] Plaintiff's emotional distress claims fail for the additional reason that under California law, claims for negligent and intentional infliction of emotional distress made within the context of the employment relationship are within the exclusive remedy provisions of the California Workers' Compensation Act. *See Cole v. Fair Oaks Fire Protection District*, 43 Cal. 3d 148, 160–61 (1987). Additionally, a necessary element of a claim for intentional infliction of emotional distress is outrageous conduct by the defendant. As Plaintiff has failed to adequately establish a claim based on discrimination, harassment, or retaliation, Plaintiff fails to allege outrageous conduct by Charter. *See Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55 (1996).

*Lillie v. ManTech Int'l Corp.*, 2017 WL 3498618, at *8 (C.D. Cal., Aug. 14, 2017). Although "a company policy, such as that evidenced in a handbook or employer policy memorandum, may give rise to a contract between employer and employee, courts have generally held that a policy containing an express disclaimer creates no enforceable contractual rights." *See id.*; *see also Xin Liu v. Amway Corp.*, 347 F. 3d 1125, 1138 (9th Cir. 2003) (dismissing plaintiff's breach of implied contract claim because "explicit at-will provisions contained in her employment letter and employee handbook suggest that no implied-in-fact contract was created that limited [defendant's] ability to terminate employment at any time").

Here, first and foremost, the uncontroverted evidence in the record shows that Plaintiff was an at-will employee. Charter offers as evidence Plaintiff's Employee Handbook Acknowledgement, which Plaintiff signed upon her commencement of employment with Time Warner, prior to the merger with Charter, acknowledging her status as an at-will employee. (*See* Exhibit 1 to Erway Decl.) Charter also provides relevant portions of Charter's Employee Handbook, which confirms Plaintiff's status as an at-will employee, and states that Charter's Handbook and the policies contained therein do not create any implied contract between Charter and Plaintiff. (*Id.* ("An employment-at-will relationship exists between Charter and its employees, meaning both parties have the right to end the employment relationship at any time, for any reason, with or without cause or notice.").)

Plaintiff argues that while she might have entered into an at-will employment agreement with Time Warner, she did not sign an employment agreement with Charter. However, Plaintiff admits in her deposition that she understood her employment with Charter was at-will. Plaintiff was asked "[a]nd you understood that you were an at-will employee at Charter. Is that correct?" to which Plaintiff replied, "[i]sn't everybody an at-will employee?" (Plaintiff's Depo., at 22:5-10.) Furthermore, the following questions were posed to Plaintiff:

Q. Did Charter represent to you that you were an at-will employee?

26

A. I believe so.

Q. Okay. And that status never changed. Is that right?

A. I believe that's correct.

(*Id.* at 22:18–23.) Plaintiff does not provide any evidence to the contrary to support her claim that an employment agreement for cause existed. Accordingly, a finding of at-will employment is proper.

Additionally, to the extent Plaintiff claims Charter breached an implied contract with Plaintiff to not violate its own policies prohibiting discrimination and harassment, Plaintiff's claim fails as a matter of law. Charter's Handbook explicitly states that "the policies and information contained in it, do not alter the employment-at-will relationship in any way, nor does it constitute a contract of employment, or create any type of express or implied contractual promise or obligation." (Exhibit 1 to Erway Decl.) A document "which states on its face that it 'is not intended to constitute or create, nor is it to be construed to constitute or create, the terms of an employment contract' cannot be a promise or a commitment to future behavior." *Bianco v. H.F. Ahmanson & Co.*, 897 F. Supp. 433, 439 (C.D. Cal. 1995). Accordingly, Plaintiff may not divine rights from a document where none exists.

In sum, the Court **GRANTS** summary judgment to Charter as to Plaintiff's breach of implied contract claim.

### K.    Plaintiff's Wage Claims

Plaintiff claims that she was a non-exempt hourly employee entitled to unpaid wages. Charter moves for summary judgment, arguing that Plaintiff was in fact an exempt outside sales employee. (Doc. No. 25-1 at 31.) Plaintiff responds by asserting that a triable issue of fact exists as to whether Plaintiff was an "exempt" outside commissioned salesperson. (Doc. No. 39 at 30.)

Under the California Labor Code and applicable California Industrial Welfare Commission ("IWC") Wage Order, "outside salespersons" are exempt from wage and hour claims. *See* Cal. Labor Code § 1171; Wage Order No. 4–2001(1)(C). The IWC defines an

outside salesperson as "any person, 18 years of age or over, who customarily and regularly works ***more than half*** the working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services or use of facilities." Wage Order No. 42001(2)(M) (emphasis added). "Unlike the corresponding federal provision, California's wage order definition takes a purely quantitative approach and focuses exclusively on whether the employee spends more than half of the workday engaged in sales activities outside the office." *Duran v. U.S. Bank Nat'l Ass'n*, 59 Cal. 4th 1, 26 (2014) (internal quotation marks omitted). The determination of whether an employee is an outside salesperson is "a mixed question of law and fact." *Ramirez v. Yosemite Water Co.*, Inc., 20 Cal. 4th 785, 794 (1999). "[U]nder California law, exemptions from statutory mandatory overtime provisions are narrowly construed." *Id.* "[T]he employer bears the burden of proving the employee's exemption." *Id.* at 795.

To meet this burden, Charter provides that Plaintiff admitted in her deposition that she spent more than half of her working time out in the field, selling Charter's products and services. (*See* Plaintiff's Depo., at 28:7-32:22 (when posed the question, "Okay. And so you would spend the majority of your days out in the field, carrying this equipment, selling Charter products to residences. Is that right?" Plaintiff answered "[t]hat is correct").

In response, Plaintiff briefly argues that notwithstanding Charter's argument that Plaintiff spent more than 50% of her time on outside sales activities, it would not excuse Charter from its failure to pay commissions due. But Plaintiff does not cite to any competent evidence demonstrating that Plaintiff is owed any commission. Plaintiff merely cites to her Complaint regarding unpaid commission but at the summary judgment stage, Plaintiff cannot "rest upon the mere allegations or denials of [her] pleading but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial." *See Estate of Tucker*, 515 F.3d at 1030. Plaintiff has failed to do so.

There are sufficient undisputed material facts for the Court to determine as a matter of law that Plaintiff is an exempt outside salesperson. The parties do not dispute that Plaintiff spent more than 50% of her working time in the field, selling Charter's products

and services. As such, Plaintiff qualifies as an exempt outside sales person. Because wage and hour claims cannot be brought by exempt outside sales employees, the Court **GRANTS** summary judgment in favor of Charter as to Plaintiff's wage claims.

### L.   Plaintiff's Defamation Claim

Charter next moves for summary judgment on Plaintiff's claim that she was defamed when Charter allegedly made false statements to other Charter employees concerning (1) Plaintiff's requirement for accommodation for her disability, (2) Plaintiff's inability to perform the MDU role, and (3) Plaintiff's termination for failing to meet her performance expectations. (Doc. No. 39 at 18–19.)

"Defamation is an invasion of the interest in reputation. The tort involves the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Ringler Associates Inc. v. Maryland Cas. Co.*, 80 Cal. App. 4th 1165, 1179 (2000). "Publication, which may be written or oral, is defined as a communication to some third person who understands both the defamatory meaning of the statement and its application to the person to whom reference is made." *Id.* Publication to a single individual is sufficient to satisfy the publication element of a defamation claim. *Id.*; *see Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (1999). Cal. Civ. Code § 47(c) extends a conditional privilege against defamation claims to communication made without malice on a subject of mutual interest. "[B]ecause an employer and its employees have a common interest in protecting the workplace from abuse, an employer's statements to employees regarding the reasons for termination of another employee generally are privileged." *King v. United Parcel Service, Inc.*, 152 Cal. App. 4th 426, 440 (2007); *see also Fisher v. Lucky Stores*, *865 Inc., No. C 93–1019 FMS, 1994 WL 125104, at *6 (N.D. Cal. Apr. 4, 1994).

In this case, Plaintiff's defamation claim centers on Charter's allegedly false statements made to Charter employees that Plaintiff required accommodation for her disability, that Plaintiff was unable to perform the MDU role, and that Plaintiff was terminated for failing to meet her performance expectations. (Doc. No. 39 at 18–19.)

29

However, Plaintiff cannot assert a defamation claim based on these statements for at least two reasons. First, Plaintiff has not provided any evidence to show that Charter's statements regarding her disability were false. For example, statements communicating that Plaintiff had medical restrictions and required accommodation were true, and in fact, form the basis of Plaintiff's failure to provide reasonable accommodation claim. Thus, these statements cannot support Plaintiff's defamation claim. Second, any assertions concerning Plaintiff's failure to meet her sales quota, and subsequently being fired, are privileged communications as long as they are not made with malice. Here, Plaintiff fails to provide any evidence tending to show that Charter made such statements with malice. Thus, the Court finds that any statements regarding the reasons Charter terminated Plaintiff are privileged from a defamation claim under California law.

In summation, the Court **GRANTS** Charter's motion for summary judgment as to Plaintiff's defamation claim.

### M. Plaintiff's Unruh Act Claim

Finally, Charter moves for summary judgment on Plaintiff's Unruh Act claims. (Doc. No. 25-1 at 32–33.) In general terms, the Unruh Act provides that "all persons are entitled to free and equal accommodations, privileges, facilities and services in all business establishments. It secures equal access to public accommodations and prohibits discrimination by business establishments." *Black v. Dep't of Mental Health*, 83 Cal. App. 4th 739 (2000). The Unruh Act, however, "has no application to employment discrimination." *Rojo v. Kliger*, 52 Cal. 3d 65 (1990). Plaintiff does not provide any contrary authority. Because Plaintiff's Unruh Act claim fails as a matter of law, the Court **GRANTS** summary judgment in favor of Charter on this claim.

//
//
//
//
//

30

**IV.   CONCLUSION**

  For all the reasons provided herein, the Court **GRANTS** Charter's motion for summary judgment in its entirety. (Doc. No. 25.) The Court of Clerk is **DIRECTED** to **CLOSE** this case.

  **IT IS SO ORDERED.**

Dated:  July 19, 2021

           Hon. Anthony J. Battaglia
           United States District Judge

31